**Polly F. PEIRCE, Appellant,**

v.

**SHELDON PETROLEUM COMPANY, a Delaware Corporation, Appellee.**

No. 9004.

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1979.

William B. Browder, Jr. and James V. Hammett, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellant.

Donald M. Hunt, Key, Carr, Evans & Fouts, Lubbock, R. Keith Drummond, Strasburger & Price, Dallas, for appellee.

COUNTISS, Justice.

This is a constructive trust case.[1] Polly Peirce sued Charlotte Carter, Charles Carter, Sheldon Petroleum Company of Texas and Sheldon Petroleum Company of Delaware alleging various causes of action against them. The trial court granted summary judgment in favor of Sheldon Petroleum Company of Delaware (hereafter Sheldon), and severed the suit against Sheldon from the other causes of action alleged by Peirce against the remaining defendants. In this court, Peirce contends that granting summary judgment was reversible error, because she had established material disputed fact questions relative to her attempt to impose a constructive trust on assets of Sheldon. We disagree and affirm the judgment of the trial court.

Peirce and Charlotte Carter became close personal friends in 1947 when both resided in Maine. Soon after the inception of the friendship, Mrs. Carter solicited $5,000 from Peirce on the representation that the money would be invested in oil properties in Texas by Mrs. Carter's son, Charles, who was attempting to get started in the oil business. Peirce and Mrs. Carter agreed that, in return for the money, Peirce was to share equally with Mrs. Carter in money and properties that would be paid to Mrs. Carter by Charles. Mrs. Carter later moved to Texas to live with her son and the friendship continued, with Peirce visiting the Carters in Texas frequently but realizing no return on her investment. In 1955, Peirce met with the Carters at their home in Texas, and they engaged in a discussion about money and the oil business which culminated in a letter agreement between Peirce and Mrs. Carter. There is a dispute concerning the agreements that were reached during the meeting, but Peirce's version is that she was to assume and pay a $5,000 indebtedness of Mrs. Carter's and give the Carters an additional $15,000 in cash. She was to be credited with a $25,000 investment and, in return for this, Charles was to

convey to Mrs. Carter one-half of his interest in his oil company, Carter and Mandel, and Mrs. Carter was to convey one-half of that interest to Peirce. Peirce subsequently gave the money to Mrs. Carter and paid the indebtedness she had assumed. She never received any interest in Carter and Mandel, however, and Charles denies ever receiving any of the money Peirce gave to Mrs. Carter. The Carters and Peirce remained friends until 1972. The relationship then began to deteriorate when Peirce was told by Mrs. Carter that, for her $25,000 investment, she would receive 1,000 shares of stock in Sheldon, valued at six or seven dollars a share. Peirce made several requests of Charles in 1973 for a settlement but to no avail. She then filed suit in 1974 claiming she was entitled to a much larger sum.

Appellee Sheldon, a Delaware Corporation, is the end product of a series of business entities that began in 1948 when Charles Carter and Sam Mandel formed the partnership of Carter and Mandel in order to invest in oil and gas properties. Since the formation of the initial partnership, Charles has maintained primary control of the business and has general powers of attorney from Mandel and other investors. In 1952, in conjunction with an investment counselor, the partnership developed a program for investors seeking tax shelters. An agency account format was used whereby the partnership invested each client's funds in oil and gas properties. After the initial payout period for the investment, Carter and Mandel received as its fee twenty-seven and one-half percent of the properties acquired while the investor retained the balance. In 1963, Sheldon Petroleum Company of Texas was formed and the property owned by the agency account investors, along with most of Carter and Mandel's property, was transferred to the corporation in return for shares of stock. In 1969, all remaining property of Carter and Mandel was transferred to Sheldon of Texas in return for a credit for money owed by

1. The venue of this case was resolved in *Sheldon Petroleum Co. v. Peirce*, 546 S.W.2d 954 (Tex.Civ.App.—Dallas 1977, no writ). The evidence before the Court of Civil Appeals at that time is essentially the same evidence before this court.

Carter and Mandel to the corporation and cash. Charles Carter, individually, received none of the stock in the newly formed company. Carter and Mandel's assets were then comprised solely of shares of stock in Sheldon of Texas. In 1970, Sheldon of Texas became a publicly owned corporation, and in 1973, Sheldon of Texas merged with and became Sheldon Petroleum Company of Delaware, the appellee in this case. This merger was accomplished through an exchange of stock that resulted in the extinguishment of Sheldon of Texas for all practical purposes. Charles Carter has at all times, throughout the history of the companies, remained in an executive and managerial capacity. He has never made any capital contribution to the partnership nor to either corporation. His sole contribution to the companies has been his services.

The controversy now before the court revolves around Peirce's attempt to impose a constructive trust on assets of the final corporation, Sheldon of Delaware. Her theory, essentially, is that the various promises given to her by Mrs. Carter and Charles made Charles a constructive trustee with regard to the Carter and Mandel property they promised to convey to her. Peirce also contends that the partnership and successive corporations operated as constructive trustees for the property because of Charles' control of those companies. Two of the three points of error presented by Peirce contend that material disputed fact questions exist with regard to her constructive trust theory. Her third point of error contends that the trial court applied an incorrect standard of review in evaluating the summary judgment evidence.

■ When Sheldon moved for summary judgment on the cause of action alleged against it by Peirce, it assumed the burden of establishing by summary judgment proof that, as a matter of law, there was no genuine issue of material fact. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Sheldon (as the defendant) had the burden of showing by uncontroverted evidence, that Peirce had no cause of action against it on the theory or theories alleged in her petition or that it had a complete affirmative defense to the cause of action. The *City of Houston v. Clear Creek Basin Authority,* 23 Tex.Sup.Ct.J. 7, 11, Tex., 589 S.W.2d 671 (1979). We are required to view the summary judgment evidence in the light most favorable to Peirce and resolve against Sheldon any doubt as to the existence of a genuine issue of material fact. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

■ The materiality of any factual dispute is keyed to the elements of proof under the theory upon which the party relies. The only cause of action against Sheldon which Peirce relies on in this court is the constructive trust theory. In *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 262–263 (1951), the Supreme Court has adopted the following description of a constructive trust:

". . . In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrong-doer. . . ."

It is obvious that the equitable remedy thus described is broad and far reaching and is designed to circumvent technical legal principles of title and ownership in order to reach a just result. One essential requirement of the remedy, however, is that the trust beneficiary must trace the equitable right asserted in an unbroken line to the property he seeks to impress with the trust. *See May v. Little*, 473 S.W.2d 632, 635–636 (Tex.Civ.App.—El Paso 1971, writ ref'd n. r. e.); *Tyler County State Bank v. Shivers*, 6 S.W.2d 108, 110 (Tex.Com.App.1928). The right may arise from many varied circumstances. Two common examples are (1) an inheritance that rightfully belongs to the beneficiary, *Eaton v. Husted*, 141 Tex. 349, 172 S.W.2d 493, 498 (1943) and (2) an agreement by the trustee to purchase specific property for the beneficiary. *Edwards v. Strong*, 147 Tex. 155, 213 S.W.2d 979 (1948).

When the beneficiary can point to the specific property that was purchased or inherited, or to its mutation, the tracing burden is met. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex.1974). When, however, tracing to specific property is impossible because the trustee has commingled the property, the right is not defeated if the beneficiary can trace to the commingled fund. *Logan v. Logan*, 138 Tex. 40, 156 S.W.2d 507 (1941). If the commingling was wrongful, the burden is on the trustee to establish which property is rightfully the trustee's. If the trustee is unable to do so, the entire commingled property is subject to the trust. *General Ass'n of Davidian S.D.A. v. General Ass'n, Etc.*, 410 S.W.2d 256, 259 (Tex.Civ.App.— Waco 1966, writ ref'd n. r. e.). If the commingling is not wrongful, the beneficiary has the burden of establishing the nature and extent of the beneficial interest in the commingled fund. *Andrews v. Andrew's Estate*, 326 S.W.2d 203, 207 (Tex.Civ. App.—Waco 1959, no writ).

Unless the tracing requirement is observed with reasonable strictness, any suit on a debt or obligation could be used to impress a constructive trust on the assets of the defendant. In the case now before us, Peirce's right is based upon the funds she delivered to or expended on behalf of Mrs. Carter. She has traced the funds to Mrs. Carter, but she readily admits they can be traced no further. Peirce is unable to trace the funds to specific property or a commingled fund now owned by Sheldon. She cannot say whether Charles ever received the money, and he denies receiving it. There is undisputed summary judgment evidence from an independent accountant, and also from Sam Mandel (Charles' partner) and from Charles that Charles never made any capital contribution to the partnership of Carter and Mandel. In view of the record before us, any conclusion as to the ultimate destination of Peirce's funds would be total speculation. Sheldon has met its summary judgment burden, and Peirce has not demonstrated that a material disputed fact question exists. We, therefore, overrule Peirce's first and second points of error.

Peirce contends that tracing of her funds is unnecessary because the interest to be conveyed to her in Carter and Mandel, one-fourth of the mineral properties acquired and to be acquired by Charles, is identified and can, therefore, be followed into Sheldon. The flaw in that argument, however, is that the assets of Sheldon are not the res of the trust she seeks to establish. The interest of Carter and Mandel that Peirce contends was to be conveyed to her has mutated into the shares of stock in Sheldon held by Carter and Mandel. If she is entitled to a constructive trust it is only against that stock. Therefore, if Peirce's view of the tracing requirements is correct, she still cannot reach Sheldon's assets.

Peirce's final point of error correctly states the standard of review applicable to summary judgment proceedings. No error is demonstrated in the application of that standard by the trial court, however. The trial court reached the correct result, and we presume it did so by applying the proper standard. We realize that in ruling on the venue of this case, the Dallas Court of Civil Appeals concluded that there was

**854**

insufficient evidence to establish certain elements of a constructive trust, while we have held, on essentially the same record, that there is no evidence to raise a fact question as to those elements. We are not bound, however, by the factual review of the court that passed on the venue question. In addition, it was not necessary for that court to undertake a "no evidence" review, since the questions it was required to resolve were disposed of by a "sufficiency" review. Peirce's third point of error is, as a result, overruled.

Our affirmance of the judgment and our discussion of the case is not to be considered as indicating our view of Peirce's causes of action against the remaining defendants. We are concerned only with her ability to raise factual questions in support of her attempt to establish a constructive trust against Sheldon, and we hold only that she failed to do so. Accordingly, the judgment is affirmed.