Ken CHAMBERS and Evelyn Chambers, Individually and as Next Friends of Bradley Chambers, Appellants,

v.

The CITY OF LANCASTER, Lancaster Police Officers Everett Powell and Jimmy Miller, and The City of Desoto and Desoto Police Officers William H. Ransom and C.P. Bentley, Appellees.

No. 05–90–00038–CV.

Court of Appeals of Texas, Dallas.

Oct. 27, 1992.

Rehearing Denied Dec. 14, 1992.

Richard N. Countiss, Dallas, for appellants.

R. Wayne Gordon, Robert G. Hogue, Thomas M. Melsheimer, Mary B. Spector, and Randall R. Kucera, Dallas, for appellees.

Before McCLUNG,[1] THOMAS, and BURNETT, JJ.

## OPINION ON REHEARING

THOMAS, Justice.

Appellees' motion for rehearing is granted. Our opinion of March 27, 1991, is withdrawn. The following is now our opinion.

Ken and Evelyn Chambers, individually and as next friends of their son, Bradley Chambers, appeal a summary judgment rendered in favor of the City of Lancaster, Lancaster Police Officers Everett Powell

---

1. The Honorable Pat McClung, Justice, participated in this cause at the time it was submitted for decision. Due to Justice McClung's retirement on January 31, 1991, he did not participate in the issuance of this opinion.

and Jimmy Miller, the City of DeSoto, and DeSoto Police Officers William H. Ransom and C.P. Bentley. In nine points of error, appellants generally contend that the trial court erred in granting the summary judgment because material disputed fact issues remain to be resolved. We agree as to the causes of action for negligence. Accordingly, the trial court's judgment granting summary judgment on the causes of action for negligence is reversed and that portion of the cause is remanded for proceedings consistent with this opinion. For the reasons set forth in this opinion, we affirm the trial court's judgment as it relates to appellants' causes of action for civil rights violations.

## FACTUAL BACKGROUND

During the early morning hours, Bradley Chambers was riding on the back of a motorcycle being driven by Scott Stiles. When Stiles ran a red light in front of DeSoto Police Officer C.P. Bentley, the officer turned on his emergency lights to stop the motorcycle. Stiles did not stop, and a high-speed chase ensued. William H. Ransom, another DeSoto Police Officer, joined the chase. Later, Lancaster Police Officers Everett Powell and Jimmy Miller joined in this pursuit. The DeSoto officers in their propane-fueled cars began to fall back, and the Lancaster officers in their more powerful cars passed the DeSoto officers. Eventually, Stiles, with Chambers riding behind him, led the officers onto an interstate highway. The chase reached speeds of eighty to one hundred miles per hour with the police cars on occasion driving within five to ten feet of the motorcycle. As Stiles attempted to exit the highway, he lost control of the motorcycle and crashed. Stiles was killed in the accident, and Chambers was seriously injured.

Chambers' parents brought suit against the DeSoto and Lancaster policemen and against the cities of DeSoto and Lancaster alleging causes of action for: (a) negligence; (b) violation of civil rights; (c) violations of the inter-jurisdictional police pursuit policy; and (d) other statutory violations. Appellees filed motions for summary judgment maintaining that they were not negligent as a matter of law because they owed no duty to Chambers, because they were not a proximate cause of the accident, and because they have immunity from suit under these facts. The trial court granted the officers' and the cities' motions for summary judgment and ordered that appellants take nothing.

## STANDARD OF REVIEW

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ).

Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970), or by conclusively establishing every factual element of an affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). Conversely, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex. 1970); *see also Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 680–81 (Tex.1982). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *Estate of Devitt*, 758 S.W.2d 601, 602 (Tex. App.—Amarillo 1988, writ denied).

## NEGLIGENCE

Appellants argue that the trial court erred in granting the summary judgment dismissing their negligence claims. In the motions for summary judgment, the officers and the cities argued that they were not liable for negligence because, as a matter of law, they had no duty to Chambers and were not the proximate cause of the accident.

### A. Duty

■ The existence of a legal duty under a given set of facts and circumstances is a question of law for the court to decide. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976); *Producers Grain Corp. v. Lindsay*, 603 S.W.2d 326, 329 (Tex.Civ. App.—Amarillo 1980, no writ). Negligence cannot exist unless there is a duty owed to the injured person; where no duty is owed to that person, no legal liability can arise on account of negligence. *Abalos*, 544 S.W.2d at 631. Appellees base their argument that they had no duty to Chambers as a matter of law on this Court's decision in *Dent v. City of Dallas*, 729 S.W.2d 114

(Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). There, we held that the police owed no duty to a person injured by someone being chased by the police. Our holding, however, has since been thrown into doubt by the Texas Supreme Court's decision in *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex.1992). While *Travis*'s holding concerned the question of proximate cause in this situation, the court remarked on the question of duty. The *Travis* court noted that the legislature has enacted at least two statutes which put on the police as drivers of authorized emergency vehicles "the duty to drive with due regard for the safety of *all persons* using the highway." *Travis*, 830 S.W.2d at 98–99 & n. 2 (emphasis added) (quoting TEX.REV. CIV.STAT.ANN. art. 6701d, § 75 (Vernon 1977)); *see* TEX.REV.CIV.STAT.ANN. art. 6701d, § 24(e) (Vernon 1977) (police have "the duty to drive with due regard for the safety of all persons," and the statute making certain traffic laws inapplicable to police in emergencies does not "protect the driver from the consequences of his reckless disregard for the safety of others"). The *Travis* court then stated, "[T]he policy embodied in those statutes does not shield police officers from liability for automobile accidents caused by the pursuit." *Travis*, 830 S.W.2d at 99. Based upon the supreme court's language, we conclude that the police under the facts in *Travis*, and therefore in *Dent* (the facts in *Travis* and *Dent* are virtually identical), have some level of duty to the individual injured in an accident with a person being pursued by the police. We further conclude that the Texas Supreme Court implicitly overruled our no-duty holding in *Dent*.

■ While this case is similar to *Dent* and *Travis*, it has a unique twist: Chambers, the person injured, was a passenger on the vehicle driven by the fleeing suspect. Chambers shares with the plaintiffs in *Travis* and *Dent* the misfortune of having been in the wrong place at the wrong time. The facts indicate no reason for Chambers being a subject of the pursuit. There is no indication that Chambers was in any way responsible for Stiles running

the stoplight—the offense that provoked the chase—or that Chambers in any way encouraged Stiles to run or keep running from the police. Chambers was apparently as innocent of any wrongdoing as Brenda Travis and Dr. Dent. If, as *Travis* indicates, the police have a duty to innocent bystanders whom the police are not even aware of until the pursued vehicle crashes into them, then it seems fair to place a similar duty on the police as to innocent bystanders whose presence the police are aware of, such as an apparently innocent passenger trapped on a motorcycle being furiously driven by a person bent on escape from the police with no thought for the safety of his passenger. The duty of the police is to drive with due regard for the safety of *"all persons,"* including the safety of an apparently innocent passenger on or in the vehicle fleeing from the police. Thus, we hold that appellees have failed to meet their summary judgment burden of proving as a matter of law that they owed no duty to Chambers. The third point is sustained.

The breach of that duty is a question of fact. The summary judgment proof submitted to the trial court shows that the chase involved speeds of eighty to one hundred miles per hour and that the pursuing police cars occasionally came within five to ten feet of the motorcycle at those high speeds. We hold that these facts are sufficient to raise a fact question.

## B. Proximate Causation

The other negligence element appellees attacked in their motions for summary judgment was the proximate cause requirement. Appellees argued that, as a matter of law, Stiles, the driver of the motorcycle, was the sole proximate cause of the accident resulting in Chambers' injuries. The same argument was made in *Travis,* and the supreme court under those facts held that the police could be a proximate cause of the accident in that case. We believe that the same reasoning applies to these facts. As the *Travis* court noted, proximate cause requires two elements: (1) cause in fact, and (2) foreseeability. "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury and that, without it, no harm would have occurred. *Travis,* 830 S.W.2d at 98. As in *Travis,* the summary judgment proof raises the inference that the motorcycle's wreck may have been caused in part by the policemen's failure to drive with due regard for Chambers' safety. The evidence thus raises a fact question as to whether the police were a cause in fact of the accident and of the injuries for which appellants seek recovery.

The element of foreseeability requires only that the actor, an individual of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. It does not require that the actor anticipate the precise manner in which the injury will occur. *Travis,* 830 S.W.2d at 98. While the criminal conduct of a third party can be a superseding cause rendering the resulting injuries unforeseeable to the actor, the criminal conduct is not a superseding cause if it is a foreseeable result of the actor's negligence. *Travis,* 830 S.W.2d at 98; *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987). Here, the cities' and the policemen's summary judgment proof does not conclusively prove that the illegal conduct which caused the accident—Stiles' high-speed exit from the highway with the resulting loss of control of his motorcycle—was an unforeseeable result of their negligence, *i.e.,* their failure to drive with due regard for the safety of all persons using the road. A fact question remains as to whether the officers and the cities were a proximate cause of the accident. We therefore sustain appellants' second and seventh points.

## C. Immunity

In their motions for summary judgment, the officers and the cities contend that they are, as a matter of law, immune from liability under these facts. We disagree. The officers contend that they are entitled to official immunity, and the cities contend that they are entitled to sovereign immunity, not waived by the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN.

§§ 101.001–101.109 (Vernon 1986 & Supp. 1992) (Texas Tort Claims Act). We shall address the entitlement of each to immunity.

### 1. Official Immunity of the Officers

 Public officers acting within their discretion are entitled to official immunity if they are engaged in a judicial or quasi-judicial activity and if they act with good faith. *Travis,* 830 S.W.2d at 102 (Cornyn, J., concurring); *Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.); *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.Civ. App.—San Antonio 1981, writ ref'd n.r.e.). While the summary judgment proof supports the fact that the officers acted in good faith in a quasi-judicial activity, the officers do not have the discretion to drive without due regard for the safety of all persons using the highway. *Cf. Travis,* 830 S.W.2d at 103–04 (Cornyn, J., concurring) (stating that, under the facts before it, the officers "were performing discretionary duties" but that a fact question existed regarding their good faith). Since the acts and conduct of the officers for which they are sought to be held civilly liable do not involve matters within their discretion as an officer or any judicial act within their discretion, they are not entitled to official immunity under these facts. *See Huddleston v. Maurry,* 841 S.W.2d 24, 29 (Tex.App.—Dallas 1992, n.w.h.); *Eubanks v. Wood,* 304 S.W.2d 567, 569–70 (Tex.Civ. App.—Eastland 1957, writ ref'd n.r.e.). If appellants are successful in proving that the officers breached their duty to drive with due regard for the safety of all persons using the highway and that the breach of that duty proximately caused Chambers' injuries, then official immunity will not protect the officers from liability. The officers cite us to *Wyse v. Department of Public Safety,* 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.), in support of their argument that they are entitled to official immunity. *Wyse* is inapplicable to these facts because the officers in that case were acting within their authority. Here, there is a genuine issue of material fact as to whether the officers were acting within their authority.

Finally, the officers ask us to follow our language in *Dent,* where we stated that, under the facts in that case, the officers would be entitled to official immunity. That language in *Dent* was dicta because, as this Court had held that the officers were not liable anyway, it did not need to reach the issue of immunity. *See Dent,* 729 S.W.2d at 117. Also, as we explained above, we conclude that *Dent* was overruled by the supreme court's holding in *Travis.*

### 2. Sovereign Immunity of the Cities

 Whether the cities are entitled to immunity is controlled by the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–101.109 (Vernon 1986 & Supp.1992). Sovereign immunity is waived to the extent provided by the Act. TEX.CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1986). The cities' liability in this case is controlled by section 101.021, which provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law. . . .

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986). In this case, the cities have failed to conclusively prove that Chambers' injuries were not due to the wrongful acts, omissions, or negligence of officers acting within the scope of their employment and that the injuries did not arise from the officers' operation of their squad cars. As noted above, the employees, *i.e.,* the officers, would be liable if appellants are successful in proving their case. The cities, therefore, fall squarely within section 101.-

021's waiver of sovereign immunity. *See Travis,* 830 S.W.2d at 105 (Cornyn, J., concurring); *Huddleston,* 841 S.W.2d at 30.

The cities argue that they fall within the exceptions to the waiver of immunity provided by sections 101.055 and 101.056. Section 101.055 provides:

■ This chapter does not apply to a claim arising:

. . . . .

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action . . .; or

(3) from the failure to provide or the method of providing police or fire protection.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.055 (Vernon Supp.1992). The cities clearly do not fall within paragraph two because this cause of action alleges that the police failed to follow the laws and ordinances applicable to emergency action, particularly article 6701d, section 24, of the Texas Revised Civil Statutes. As for paragraph three, that provision has been interpreted by the supreme court as shielding the government from judicial review of the policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community. *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979). Appellants, however, insofar as their negligence claims are concerned, do not seek to hold the cities liable for their policy decisions concerning the amount, type, and quality of police protection to provide; instead, they seek to hold the cities vicariously liable as employers for the negligent torts of their employees. As the *Terrell* court held, governments are subject to liability for injuries arising out of the negligence of their policemen in operating their police cars. *See Terrell,* 588 S.W.2d at 789. The cities, therefore, are not entitled to the exception to the waiver of governmental immunity provided by Texas Civil Practices and Remedies Code section 101.055(2) and (3).

Finally, the cities argue that the exception to the waiver of immunity provided by Texas Civil Practices and Remedies Code section 101.056 is applicable to this case. We disagree. Section 101.056 provides:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). The *Terrell* court stated that the purpose of this provision was "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions." *Terrell,* 588 S.W.2d at 787. This case, however, does not require the courts to review the wisdom of the cities' exercise of their discretion in making policy decisions. No policy decision by the cities is in issue in appellants' negligence claims. At most, this case involves the implementation of policy decisions, which does not fall within the exception to the waiver of liability. *See Sbrusch v. Fort Bend County Drainage Dist.,* 788 S.W.2d 896, 899 (Tex.App.—Houston [14th Dist.] 1990) (implementation of policy of repairing bridge not within exception to waiver of immunity), *rev'd on other grounds,* 818 S.W.2d 392 (Tex.1991); *Christilles v. Southwest Tex. State Univ.,* 639 S.W.2d 38, 42–43 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (decision by theater director to use an actual glass drinking glass in play instead of safety glass was not the kind of policy decision to which the exception to waiver of immunity applied); *Norton v. Brazos County,* 640 S.W.2d 690, 692–93 (Tex.App.—Houston [14th Dist.] 1982, no writ) (methods of providing care and feeding of inmates are only incidental to policy decision, and exception to waiver of immunity does not apply). Section 101.056 is therefore inapplicable.

We hold that the officers and the cities have failed to prove that they are entitled to immunity as a matter of law. The sixth point is sustained. As the officers and cities have failed to prove as a matter of law all elements of an affirmative defense or to disprove as a matter of law any element of appellants' negligence claims, the summary judgment as to these causes of action must be reversed. The fourth and fifth points are sustained.

## SECTION 1983

■ In the eighth point, appellants contend that the trial court erred in granting summary judgment dismissing their claims brought under title 42, section 1983 of the United States Code. *See* 42 U.S.C.A. § 1983 (West 1981). In their first amended petition, appellants alleged that the officers used excessive force, which deprived Chambers "of his liberty without due process of law in violation of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution." Appellants alleged that the cities violated Chambers' constitutional rights by promulgating customs, rules, regulations, and policies that the officers followed in violating Chambers' constitutional rights. Therefore, the cities cannot be liable for violating Chambers' constitutional rights unless the officers violated his constitutional rights.

■ After the parties had filed their motions for summary judgment but before the trial court ruled on the motions, the United States Supreme Court issued *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), which rejected the use of a substantive due-process analysis in section 1983 excessive-force cases. *Graham*, 490 U.S. at 392, 109 S.Ct. at 1870. Section 1983 does not create any substantive rights but is merely "a method for vindicating federal rights elsewhere conferred." *Graham*, 490 U.S. at 394, 109 S.Ct. at 1870 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). Parties bringing section 1983 claims for excessive force should identify the specific constitutional right allegedly infringed. *Graham*, 490 U.S. at 392, 109 S.Ct. at 1870. Section 1983 claims against law-enforcement personnel for using excessive force in stopping or arresting a free citizen are to be analyzed under the Fourth Amendment's objective-reasonableness standard and not under a substantive due-process standard. *Graham*, 490 U.S. at 394, 109 S.Ct. at 1871. Because appellants' petition alleges only due-process violations and fails to seek relief under the Fourth Amendment, the petition fails to state a cause of action under section 1983. We overrule the eighth point.

■ In the ninth point, appellants contend that the trial court erred in granting summary judgment for failure to state a claim for deprivation of constitutional rights without giving them an opportunity to amend their pleadings. Ordinarily, summary judgment should not be granted for failure to state a cause of action unless the trial court has sustained special exceptions to the petition and the plaintiff has been given an opportunity to replead. *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 805 (Tex.1989). If, however, the petition affirmatively demonstrates that no cause of action exists or that the plaintiff's recovery is barred, then summary judgment is proper. *Peek*, 779 S.W.2d at 805.

■ Under these facts, the only arguable claim for constitutional deprivation that appellants could raise was that of the use of excessive force by the officers thereby violating Chambers' Fourth Amendment right to freedom from unreasonable searches and seizures. If, as a matter of law, under the facts of this case, either no seizure occurred or the force used by the officers was reasonable, then no Fourth Amendment violation occurred. *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir.1986).

■ In *Galas v. McKee*, the Sixth Circuit held that the police did not "seize" the plaintiff for Fourth Amendment purposes by pursuing the plaintiff at a high rate of speed until the plaintiff lost control

of his car and crashed.[2] *Galas*, 801 F.2d at 203. The United States Supreme Court stated in another case its agreement with the *Galas* holding. *Brower v. County of Inyo*, 489 U.S. 593, 595, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). As the Court stated in *Brower*, a Fourth Amendment seizure does not occur anytime an individual's freedom of movement is terminated by a governmental officer, nor even when the officer desires that the individual's freedom of movement be terminated. Instead, a seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied." Brower*, 489 U.S. at 597, 109 S.Ct. at 1381. It was the lack of intentionally applied means by the officers stopping the pursued car in *Galas* that prevented there from being a Fourth Amendment seizure. If the police in *Galas* had not simply pursued the car until the driver lost control and crashed but, "instead of that, the police cruiser had pulled alongside the fleeing car and side-swiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." *Brower*, 489 U.S. at 597, 109 S.Ct. at 1381. In the case before it, the *Brower* Court held that actions of the police in placing an 18–wheel tractor-trailer across both lanes of a two-lane highway, in effectively concealing this roadblock by placing it behind a curve and leaving it unilluminated, and in positioning a police car with its headlights shining between the fleeing driver and the roadblock, thereby effectively blinding the driver as he approached the roadblock, constituted a seizure for Fourth Amendment purposes. *Brower*, 489 U.S. at 593, 597, 109 S.Ct. at 1380, 1382. Finally, in *California v. Hodari D.*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that a seizure under the Fourth Amendment "requires either physical force ... or, where that is absent, submission to the assertion of authority." *Hodari*, —— U.S. at ——,

111 S.Ct. at 1551 (emphasis omitted). An uncomplied-with show of authority, even if it involves pursuit by the police, does *not* constitute a seizure under the Fourth Amendment. *Hodari*, —— U.S. at ——, 111 S.Ct. at 1551.

In the facts of the case before us, the officers only pursued Stiles and Chambers until Stiles lost control and crashed. The police did not intentionally cause the crash by setting up a roadblock, side-swiping the motorcycle, or other means. Nor did Stiles and Chambers submit to the officers' show of authority. Therefore, even if the officers were negligent, as a matter of law, they did not seize Chambers with either reasonable or excessive force. We conclude that the facts before us are analogous to *Galas*, not *Brower*. Because appellants' petition affirmatively demonstrates that no cause of action exists for deprivation of civil rights, the trial court did not err in granting the cities' and officers' motions for summary judgment as to these claims. The ninth point is overruled.

The trial court's judgment granting appellees' motions for summary judgment as to appellants' causes of action for civil rights violations is affirmed. The trial court's judgment granting appellees' motions for summary judgment as to the causes of action for negligence is reversed, and that portion of the cause is remanded.

---

**2.** The court also held as a matter of law that the use of high-speed pursuits to apprehend traffic violators is not an unreasonable use of force. *Galas*, 801 F.2d at 204. Because we hold as a matter of law that the high-speed pursuit in this case did not constitute a Fourth Amendment seizure, we need not, and do not, reach the issue of the reasonableness of high-speed chases to apprehend traffic violators.