NUMBER 13-00-243-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________

 

OASIS OIL CORPORATION AND OASIS TRANSPORTATION 

AND MARKETING CORPORATION


v.


KOCH REFINING COMPANY L.P., Appellee.

____________________________________________________________


On appeal from the 347th District Court

of Nueces County, Texas.

____________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Yañez and Rodriguez

Opinion by Chief Justice Rogelio Valdez


Appellants, Oasis Oil Corporation and Oasis Transportation and Marketing Corporation ("Oasis"), sold a product
manufactured by appellee Chemical Process & Production, Inc. ("CP&P"), to Koch Refining Company ("Koch"). The
product allegedly damaged Koch's refinery. Koch brought suit against Oasis, which sought indemnity from CP&P under
chapter 82 of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001 - 82.006
(Vernon 1997). CP&P filed both traditional and no-evidence motions for summary judgment, and the trial court granted
summary judgment in favor of CP&P. The dispositive question in this appeal is whether Oasis, the seller of the product, 
was entitled to indemnity from CP&P, the manufacturer, against loss arising from the product liability action instituted by
Koch. Because we find that the summary judgment cannot stand on any ground asserted by CP&P, we reverse and remand.

Factual and Procedural Background


 In reviewing the summary judgment record, the appellate court must resolve all factual disputes and indulge all inferences
in favor of the non-movant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Accordingly, although
there are numerous factual disputes in this case, the following statement of facts resolves those conflicts in favor of Oasis.

 The main parties in the underlying litigation were Whytecliff, CP&P, Oasis, and Koch. Whytecliff owned a large quantity
of a naphtha product, which is a hydrocarbon, and Whytecliff contracted with CP&P to process that naphtha product for
sale. Whytecliff's naphtha product was unusually high in organic chlorides, which can damage processing facilities by
forming hydrochloric acid during high-temperature processing. Accordingly, Whytecliff had the levels of organic chlorides
tested, and provided that testing data to CP&P. Despite the high organic chloride levels, CP&P nevertheless agreed to
accept a fee in exchange for distilling Whytecliff's naphtha product. One of the distillates from CP&P's processing was a
substance called "overheads," also referred to as crude naphtha. CP&P's distillation process increased the concentration of
the harmful organic chlorides in the crude naphtha overheads by four fold.

 CP&P then contacted Oasis and asked if Oasis was interested in buying Whytecliff's crude naphtha overheads. Oasis is an
oil gatherer that sells hydrocarbons to Koch, which then further refines the petrochemicals. When CP&P contacted Oasis
about buying the crude naphtha, CP&P provided Oasis with a certified chemical analysis that identified the product as
crude naphtha with certain additional distillates and by-products. This certified chemical analysis CP&P provided to Oasis
did not reveal the presence of organic chlorides in the crude naphtha, and CP&P did not provide Oasis with the chemical
analysis of the organic chloride levels that Whytecliff had provided to CP&P. Oasis purchased the crude naptha overheads,
then sold them to Koch.

 Oasis delivered the crude naphtha with high organic chloride levels into Koch's pipeline system. Subsequently, Koch
claimed that the high organic chloride levels damaged Koch's plant, and Koch consequently sued Oasis. No party disputes
that Koch's claims against Oasis fell within the definition of a product liability action under chapter 82 of the Texas Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001 - 82.006 (Vernon 1997). Ultimately,
Oasis settled with Koch for $700,000 and brought a claim for indemnity against CP&P under chapter 82. See id. at
§82.002 (manufacturer's duty to indemnify).

 CP&P filed a conventional motion for summary judgment, which was denied. CP&P later filed a no-evidence motion for
summary judgment that also reasserted its conventional motion for summary judgment, and the trial court granted the
motion for summary judgment without specifying the basis for its ruling. This summary judgment was then appealed to
this Court.

Standard of Review


 The function of a summary judgment is to eliminate patently unmeritorious claims and untenable defenses. Gulbenkian v.
Penn, 252 S.W.2d 929, 931 (Tex. 1952); see also Chambers v. City of Lancaster, 843 S.W.2d 143, 146 (Tex. App.-Dallas
1992), aff'd in part, rev'd in part on other grounds, 853 S.W.2d 650 (Tex. 1994) (citing Gulbenkian, 252 S.W.2d at 931). 
The Texas Supreme Court has established the following standards for reviewing a motion for summary judgment:

 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it
is entitled to judgment as a matter of law.



 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true.



 3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.



Nixon, 690 S.W.2d at 548-49.

 The summary judgment movant must establish its entitlement to summary judgment as a matter of law on each cause of
action alleged. Clark v. First Nat'l Bank of Highlands, 794 S.W.2d 953, 955 (Tex. App.-Houston [1st Dist.] 1990, no
writ);see also Tex. R. Civ. P. 166a(c). When the defendant is the movant, summary judgment is proper only if the plaintiff
cannot succeed upon any theory pleaded as a matter of law. Chambers, 843 S.W.2d at 146 (citing Peirce v. Sheldon
Petroleum Co., 589 S.W.2d 849, 852 (Tex. Civ. App.-Amarillo 1979, no writ)). The defendant must either conclusively
negate an element from each of the plaintiff's causes of action or conclusively establish every element of an affirmative
defense. Chambers, 843 S.W.2d at 147 (citing Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Swilley
v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972)). In response, the plaintiff can bar summary judgment by presenting evidence
that creates a fact question on the challenged elements of the plaintiff's case or by showing that the defendant's legal
position is unsound. Chambers, 843 S.W.2d at 147 (citing Puga v. Donna Fruit Co., 634 S.W.2d 677, 680-81 (Tex. 1982);
Torres v. Western Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex. 1970); Estate of Devitt, 758 S.W.2d 601, 602 (Tex.
App.-Amarillo 1988, writ denied)).

 When a motion for summary judgment is based on no-evidence grounds, the Texas Supreme Court has ordered that the
courts must apply these rules in light of the following additional caveats:

 1. the no-evidence motion can only be brought against "a claim or defense on which an adverse party would have the
burden of proof at trial," Tex. R. Civ. P. 166a(i); 



 2. "the motion must state the elements as to which there is no evidence," Id.;



 3. "the motion must be specific in challenging the evidentiary support for an element of a claim," Tex. R. Civ. P. 166a cmt.;



 4. "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case," Id.;



 5. "its response need only point out evidence that raises a fact issue on the challenged elements," Id.; and



 6. "the respondent is not required to marshal its proof." Id.

 

"The trial court may not grant a no-evidence summary judgment if the respondent brings forth more than a scintilla of
probative evidence to raise a genuine issue of material fact." Zapata v. The Children's Clinic, 997 S.W.2d 745, 747 (Tex.
App.-Corpus Christi 1999, no pet.).

Applicable Law




In product liability actions, Texas law clearly distinguishes between negligence claims based on conduct and strict liability
claims based on products. In the American Tobacco Co. v. Grinnell case, for example, the Texas Supreme Court explained
the distinction as follows:

 negligent design and manufacturing claims are conceptually distinguishable from the strict liability claims. While strict
liability focuses on the condition of the product, "[n]egligence looks at the acts of the manufacturer and determines if it
exercised ordinary care in design and production." Negligent design and manufacturing claims are predicated on the
existence of a safer alternative design for the product.



Amer. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 437 (citing Caterpillar, Inc. v. Shears, 911 S.W.2d 379, 384-85
(Tex. 1995); Gonzales v. Caterpillar Tractor Co., 571 S.W.2d 867, 871-72 (Tex.1978)).

When a products liability action is submitted to the jury on a theory of negligent manufacture or negligent design, the
defendant is held liable based on proof that its negligent conduct proximately caused the claimant's damages. See
Torrington Co. v. Stutzman, 46 S.W.3d 829, 836-37 (Tex. 2000). In contrast, when a products liability action is submitted
to the jury on a strict liability theory, the defendant is held liable based on proof that it placed the product into the stream of
commerce and upon further proof that the defective product was a producing cause of the claimant's damages. See
Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 613 (Tex. 1996). This distinction is critical because strict liability
claims are based on the product and, therefore, strict liability claims may be asserted against "innocent sellers" (1) who have
no culpable responsibility except for their role as an intermediary seller that merely received a defective product and
unknowingly sold it down the stream of commerce. See generally id. 

To balance the right of consumers to sue any party who places a product into the stream of commerce against the potential
unfairness of subjecting significant financial liability upon an "innocent seller," the Texas Legislature created a statutory
right to indemnification. See Fitzgerald v. Advanced Spine Fixation Sys., 996 S.W.2d 864, 868-69 (Tex. 1999). The
statute protects innocent sellers; it places primary liability on manufacturers, who are usually in a better position to
recognize and remedy defects. Graco, Inc. v. CRC, Inc. of Texas, No. 05-98-01438-CV, 2001 Tex. App. LEXIS 2969, *6-7
(Dallas May 8, 2001, no pet.); see Fitzgerald, 996 S.W.2d at 868-69.

The seller's claim for indemnity under chapter 82 of the civil practice and remedies code is a statutory cause of action. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001 - 82.006 (Vernon 1997). Like other statutory causes of action, the elements
of the cause of action must track the statute. See Borneman v. Steak & Ale, Inc., 22 S.W.3d 411, 412 (Tex. 2000)(citing
Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994)). The statute defines the claim for indemnity as
follows:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for
any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying
or altering the product, for which the seller is independently liable. . . . The duty to indemnify under this section . . . applies
without regard to the manner in which the action is concluded.



Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a), (e) (Vernon 1997). The terms "manufacturer," "seller," "loss," "products
liability action" are all expressly defined by statute:

 "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder,
processor, or assembler of any product or any component part thereof and who places the product or any part thereof in the
stream of commerce.



 "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose,
in the stream of commerce for use or consumption a product or any component part thereof. . . . [A] wholesale distributor
or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be
considered a seller.



 "[L]oss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages . . . . A
seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and
any reasonable damages incurred by the seller to enforce the seller's right to indemnification . . . .



"Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal
injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability,
strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or
combination of theories.



Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001(2), (3), (4), 82.002(b), (g) (Vernon 1997). (2)

Analysis


In March, the Texas Supreme Court issued an opinion in Meritor Automotive, Inc. v. Ruan Leasing Co., in which the
supreme court holds that a manufacturer must indemnify an innocent seller for the seller's costs to defend an unsuccessful
negligence claim, even though that claim is asserted independently of a product liability claim. Meritor Automotive, Inc. v.
Ruan Leasing Co., 44 S.W.3d 86, 91 (Tex. 2001). Meritor is relevant to the instant case because it clearly indicates that the
manufacturer has the burden of proof to avoid the duty to indemnify an innocent seller. "[W]hile the manufacturer's duty to
indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty
is established by a finding that the seller's independent conduct was a cause of the plaintiff's injury." Id. 

Under Texas Rule of Civil Procedure 166a(i), CP&P could only bring a no-evidence motion for summary judgment on a
claim or defense on which Oasis would have the burden of proof at trial. Under Meritor, CP&P bears the burden of proof
to avoid indemnifying Oasis, thus a no-evidence motion would not be appropriately granted on this ground.

Moreover, CP&P's motion appears deficient on other grounds. By filing a no-evidence motion for summary judgment,
CP&P assumed the duty to expressly state which elements of Oasis's cause of action it was challenging. In the no-evidence
portion of its motion for summary judgment, CP&P argued that there was "no evidence of causation and chain of custody,"
"no evidence of defect," and "no evidence of other elements." None of these three arguments is a proper no-evidence
challenge to a claim for indemnity to a seller under chapter 82.

First, the traditional notion of causation is not an element of the seller's statutory claim for indemnity. See id. Instead of
proving either proximate or producing causation in the traditional manner, a claimant need only prove that it is a statutory
seller which suffered a qualifying loss in a products liability action as defined by statute and that the defendant qualifies as
a statutory manufacturer. See id. CP&P's appellate brief focuses extensively on the alleged lack of evidence of "but for"
causation and the alleged lack of evidence of foreseeability, but these two constituent components of proximate cause are
not elements of Oasis's statutory claim for indemnification. Indeed, foreseeability is not even an element of a strict liability
claim that generally underlies such a claim for indemnification. See, e.g., Union Pump Co. v. Allbritton, 898 S.W.2d 773,
775 (Tex. 1995)(foreseeability is an element of proximate cause, as underlies a negligence action, but is not an element of
producing cause, as underlies a strict liability action).

Second, neither proof regarding the product's chain of custody nor proof of a product defect is an element of the seller's
statutory claim for indemnity. The statutory scheme expressly relieves the seller of obtaining a defect finding by
authorizing indemnification regardless of "the manner in which the action is concluded." Tex. Civ. Prac. & Rem. Code
Ann. § 82.002(e)(1); see also Meritor, 46 S.W.3d at 91. Clearly, if a statutory seller's pretrial settlement of a qualifying
products liability action is reasonable, then the statutory seller is entitled to indemnification from the statutory
manufacturer. See Fitzgerald, 996 S.W.2d at 867. While the state of evidence concerning the product's chain of custody
and its defect might be relevant to the issue of the reasonableness of damages, CP&P has not challenged the element of
reasonableness. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(b) (Vernon 1997) (requiring generally that losses and
damages be reasonable). Rule 166a(i) strictly requires that "the motion must be specific in challenging the evidentiary
support for an element of a claim." Tex. R. Civ. P. 166a(i). We will not dilute this requirement by reading challenges to
the "chain of custody" and the "defect" broadly as a challenge to the evidence of reasonableness.

Finally, the third of CP&P's arguments - that there was "no evidence of other elements" - is clearly insufficient as a matter
of law to raise any duty to respond under Rule 166a(i) because this is nothing more than a prohibited "conclusory" motion
or "general" no-evidence challenge to an opponent's case. Tex. R. Civ. P. 166a cmt. On its face, this sort of prohibited rule
166a(i) challenge fails to meet the requirement that "the motion must be specific in challenging the evidentiary support for
an element of a claim." See id. Accordingly, CP&P's motion did not meet the requirements of the rule and the trial court
could not have appropriately granted summary judgment on that ground.

Traditional Motion for Summary Judgment


Because the trial court granted CP&P's motion for summary judgment without specifying the grounds for its ruling, the
summary judgment will be upheld if any of the theories advanced by CP&P are meritorious. State Farm Fire & Cas. Co. v.
S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). In this case, CP&P expressly incorporated by reference its traditional
motion for summary judgment, previously filed and denied by the trial court, into its no-evidence motion for summary
judgment. Assuming, without deciding, that such incorporation by reference properly allows review, see Chapman v. King
Ranch, Inc., 41 S.W.3d 693, 700 (Tex. App.-Corpus Christi 2001, no pet.) (allows incorporation by reference of other
co-defendant's motions for summary judgment); but see McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341
(Tex. 1993)(motion for summary judgment must expressly present grounds for judgment), none of CP&P's traditional bases
for summary judgment suffice to support the summary judgment.

 CP&P premised its traditional motion for summary judgment on three separate grounds: (1) it was not liable because it
was not a manufacturer and did not own the product it processed for Whytecliff; (2) it owed no duty to Koch because it was
not foreseeable that a product CP&P manufactured would be sold to Koch; and (3) Oasis committed a criminal act which
superceded any responsibility CP&P had for the product it manufactured. 

In terms of the first ground, under product liability law, liability attaches to a "processor" of products, and not merely
manufacturers, and the statute does not require ownership of the relevant goods. See Tex. Civ. Prac. & Rem. Code Ann. §
82.001(4) (Vernon 1997). 

The second ground fails for reasons discussed above in the no-evidence context, that is, foreseeability is not a requirement
in an action for indemnification under the civil practice and remedies code. Meritor, 46 S.W.3d at 91; see Union Pump
Co., 898 S.W.2d at 775.

The third ground raised by CP&P, a criminal intervening act committed by Oasis, falls within the exception to the
manufacturer's duty to indemnify the seller. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a) (Vernon 1997)
(manufacturer shall indemnify seller except for any loss "caused by the seller's negligence, intentional misconduct, or other
act or omission, such as negligently modifying or altering the product, for which the seller is independently liable"). 
Specifically, CP&P alleges that Oasis committed a criminal act by putting naptha rather than crude oil into Koch's
pipelines. In reviewing the summary judgment evidence, we must indulge every reasonable inference in favor of Oasis, and
resolve any doubts in its favor. Nixon, 690 S.W.2d at 548-49. Applying this standard to the evidence at hand, we conclude
that CP&P has failed to conclusively establish that Koch's loss was caused by Oasis's alleged criminal act. 

Accordingly, we reverse the summary judgment in favor of CP&P and remand the cause for further proceedings.

 



__________________

ROGELIO VALDEZ

Chief Justice



Publish .

Tex. R. App. P. 47.3(b).

Opinion delivered and filed

this 23rd day of August, 2001. 

1. Plaintiffs in strict liability cases are given the right to sue any party in the stream of commerce -- even "innocent sellers"
-- based on the public policy that consumers may not know the identity of a product's manufacturer or may not have legal
recourse against such manufacturers, but the seller of the product is generally more easily identified and subjected to the
jurisdiction of local courts.

2. The statutory scheme also includes other provisions concerning notice to the manufacturer, the deemed reasonableness of
certain losses, and confirming that the statutory claim supplements any other duty to indemnify. It is unclear whether the
notice provision might be considered an element of the statutory claim for indemnity, but we need not decide that issue
because it is irrelevant to this case.