NUMBER 13-01-689-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 

CURTIS W. BOYLES, INDIVIDUALLY AND D/B/A
PACE OIL AND GAS COMPANY,                                              Appellants,

v.

EXXON CORPORATION, AND EXXON TEXAS,
INC., AS SUCCESSOR IN INTEREST TO 
HUMBLE OIL AND REFINING CO.,                                            Appellees.




On appeal from the 24th District Court
of Refugio County, Texas.




M E M O R A N D U M O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Dorsey




                            Opinion by Chief Justice Valdez
      Curtis W. Boyles, individually and doing business as Pace Oil & Gas Company
(“Boyles”), sued Exxon Corporation and Exxon Texas, Inc., as successor in interest to
Humble Oil & Refining Company (“Exxon”), for, inter alia, fraud, tortious interference with
economic opportunities, and breach of various regulatory laws. Boyles alleged that
Exxon’s wrongful conduct caused damage to the value of Boyles’s overriding royalty
interest on an oil and gas lease in Refugio County, Texas. The trial court granted a partial
summary judgment in favor of Exxon and severed the judgment. Boyles attacks this
summary judgment by three issues. We affirm. 
Factual and Procedural Background
          During the 1950s and subsequently, Exxon held the oil and gas leases on several
thousand acres of land owned by Mary Ellen and Thomas James O’Connor in Refugio
County, Texas (the “O’Connor Tract”). This tract possessed multiple producing zones with
extended commercially viable hydrocarbon production. 
          Exxon began development of this tract and another contiguous tract sharing a
common series of reservoirs, held under a separate mineral lease, almost
contemporaneously. The royalty obligations for the O’Connor tract were more onerous
than those for the contiguous tract and Exxon tried but failed to renegotiate a more
favorable royalty obligation for the O’Connor land. Exxon began plugging and abandoning
the wells on the O’Connor tract while continuing to work and develop the contiguous tract. 
By 1991, Exxon’s leases on the O’Connor tract had terminated.
          In March and April of 1993, Pace West Production, Ltd., lessee, entered an oil and
gas lease and security agreement with Molly Louise Miesch Allen and others regarding
portions of the O’Connor tract. In the course of various conveyances associated with the
lease, Boyles acquired an overriding royalty interest


 and Emerald Oil & Gas L.C.
(“Emerald”) acquired the working interest


 in the lease. Boyles sold the override to Saglio
Partnership, Ltd. on or about June 1, 1995, for the sum of $550,000.00. 
          In 1996, in cause number 96-7-8148 in the 135th Judicial District Court of Refugio
County, the lessor royalty interest owners and Emerald brought suit against Exxon alleging
that Exxon intentionally sabotaged the wells on the O’Connor tract by leaving refuse,
parted casing, cut casing, plugs, and obstructions in the wells and pumping tank bottom
sand and other contaminants into the wells, thereby damaging the reservoir and
committing waste. The plaintiffs argued that Exxon attempted to inhibit or destroy any
future possibility of redevelopment of the oil and gas reserves underlying the O’Connor
tract. The jury found that Exxon maliciously committed waste, breached its contractual
duty to “prosecute diligently a continuous drilling and development program until said tract
is fully developed for oil and gas,” and fraudulently concealed its failure to develop the
tract. The trial court granted a directed verdict against Emerald but rendered judgment on
the verdict and awarded the property owners $8,600,000 in actual damages, $10,000,000
in punitive damages, and $2,795,000 in prejudgment interest.



          On or around January 10, 2000, Boyles was informed of the jury’s findings and the
trial court’s judgment in cause number 96-7-8148 and thus learned of Exxon’s alleged
wrongful conduct regarding the O’Connor Tract. Boyles filed suit against Exxon on April
7, 2000 for damage to the value of his overriding royalty interest alleging causes of action
for breach of the regulatory law duty to properly plug a well, breach of a regulatory law duty
in committing waste, tortious interference with economic opportunity, fraud, and loss of
value to the override due to improper plugging. 
          Exxon moved for summary judgment on both traditional and no evidence grounds. 
Exxon argued that it was entitled to a traditional take-nothing summary judgment because
(1) even if all of Boyles’s causes of action exist, each is barred by limitations; (2) there is
no private cause of action for breach of a regulatory law duty to plug a well in a particular
fashion; and (3) there is no private cause of action for breach of any regulatory law duty
not to commit waste. Exxon argued that it was entitled to a no evidence summary
judgment on Boyles’s tortious interference claims because there is no evidence that Boyles
and any third party had any existing or prospective contract with which Exxon could have
interfered when it plugged its wells, and there is no evidence that Exxon intended to
interfere with any interest belonging to Boyles when it plugged its wells. 
          The trial court granted Exxon’s motion for summary judgment regarding Boyles’s
claims for (1) breach of a regulatory duty to properly plug a well, (2) breach of a regulatory
law duty to not commit waste, and (3) tortious interference with economic opportunity, but
denied the summary judgment regarding Boyles’s remaining claims of fraud and loss of
value to the override. The court then severed the summary judgment and this appeal
ensued. 
          In three issues, Boyles contends that the trial court erred in granting summary
judgment on his cause of action for breach of the regulatory law duties prohibiting waste,
the breach of the regulatory law duty to properly plug a well, and his claim for tortious
interference with economic opportunity.
Standard of Review
          The function of a summary judgment is to eliminate patently unmeritorious claims
and untenable defenses. Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952); Oasis
Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248, 251 (Tex. App.–Corpus Christi 2001, pet.
denied). The Texas Supreme Court has established that the movant for summary
judgment has the burden of showing that (1) there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the nonmovant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985); Oasis Oil Corp., 60 S.W.3d at 252.
          The summary judgment movant must establish its entitlement to summary judgment
as a matter of law. Oasis Oil Corp., 60 S.W.3d at 252; Clark v. First Nat'l Bank of
Highlands, 794 S.W.2d 953, 955 (Tex. App.–Houston [1st Dist.] 1990, no writ)); see also
Tex. R. Civ. P. 166a(c). The defendant as movant must either conclusively negate an
element from the plaintiff's causes of action or conclusively establish every element of an
affirmative defense. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970);
Richard v. Reynolds Metal Co., 108 S.W.3d 908, 909 (Tex. App.–Corpus Christi 2003, no
pet.). In response, the plaintiff can bar summary judgment by presenting evidence that
creates a fact question on the challenged elements of the plaintiff's case or by showing that
the defendant's legal position is unsound. Puga v. Donna Fruit Co., 634 S.W.2d 677, 680-81 (Tex. 1982); Oasis Oil Corp., 60 S.W.3d at 252.
          When a motion for summary judgment is based on no-evidence grounds, the Texas
Supreme Court has ordered that the courts must apply these rules in light of the following
additional caveats:
1.the no-evidence motion can only be brought against “a claim or
defense on which an adverse party would have the burden of proof at
trial,” Tex. R. Civ. P. 166a(i); 
 
2.“the motion must state the elements as to which there is no evidence,” 
Id.;
 
3.“the motion must be specific in challenging the evidentiary support for
an element of a claim,” Tex. R. Civ. P. 166a cmt.;
 
4.“paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent’s case,” Id.;
 
5.the “response need only point out evidence that raises a fact issue on
the challenged elements,” Id.; and
 
6.“the respondent is not required to marshal its proof.” Id.
 
Oasis Oil Corp., 60 S.W.3d at 252. “The trial court may not grant a no-evidence summary
judgment if the respondent brings forth more than a scintilla of probative evidence to raise
a genuine issue of material fact.” Zapata v. The Children’s Clinic, 997 S.W.2d 745, 747
(Tex. App.–Corpus Christi 1999, no pet.).
                                                             Limitations
          On appeal, we review all of the summary judgment grounds on which the trial court
actually ruled, whether granted or denied, and which are dispositive of the appeal, and may
consider any grounds on which the trial court did not rule. Baker Hughes, Inc. v. Keco
R&D, Inc., 12 S.W.3d 1, 6 (Tex. 1999). The trial court denied Exxon’s motion for summary
judgment based on the relevant statutes of limitation. However, given that this issue is
dispositive of this appeal, we begin our analysis here.
          Boyles initially filed suit in April 2000. He asserts that his claims were timely filed
based on the discovery rule and fraudulent concealment. Exxon argues that Boyles’s
claims for breaches of regulatory law duties are governed by a four year statute of
limitations under Texas Civil Practice & Remedies Code section 16.051 (Vernon 1997),
and Boyles’s claim for tortious interference is governed by a two year statute of limitations. 
Harrison v. Bell, 99 S.W.3d 163, 167 (Tex. App.–Corpus Christi 2002, no pet.); see Tex.
Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002). According to Exxon, it had
completed plugging its wells by August 16, 1991, and because Boyles did not file suit by
August 15, 1993, or August 15, 1995, his claims were barred by limitations. Exxon
contends that fraudulent concealment and the discovery rule do not operate to save
Boyles’s causes of action because Boyles failed to use reasonable diligence to discover
his causes of action. 
          A defendant moving for summary judgment on the affirmative defense of limitations
has the burden to conclusively establish that defense. KPMG Peat Marwick v. Harrison
County Housing Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must
(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule,
if it applies and has been pleaded or otherwise raised, by proving as a matter of law that
there is no genuine issue of material fact about when the plaintiff discovered, or in the
exercise of reasonable diligence, should have discovered the nature of its injury. Id.; see
Janis v. Melvin Simon Associates, Inc., 2 S.W.3d 647, 650 (Tex. App.–Corpus Christi
1999, pet. denied). 
          The discovery rule operates to defer accrual of a cause of action until the plaintiff
knows, or, by exercising reasonable diligence, should know of the facts giving rise to the
claim. Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 736 (Tex. 2001). The discovery
rule provides that limitations run from the date the plaintiff discovers or should have
discovered, in the exercise of reasonable care and diligence, the nature of the injury. See
Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998). Discovering the “nature of the
injury” requires knowledge of the wrongful act and the resulting injury. See id.
          The discovery rule is a “very limited exception to statutes of limitations,” available
only when the nature of the plaintiff’s injury is both inherently undiscoverable and
objectively verifiable. Computer Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex.
1996). In determining whether an injury is “inherently undiscoverable,” we do not examine
whether the particular plaintiff was able to discover the injury; rather, we determine whether
an injury is inherently undiscoverable on a categorical basis. Apex Towing Co. v. Tolin, 41
S.W.3d 118, 122 (Tex. 2001). Thus, we do not determine whether Boyles could have
discovered his injury within the limitations period, but instead decide whether the injury
alleged by Boyles is “the type of injury that generally is discoverable by the exercise of
reasonable diligence.” HECI Exploration Co. v. Neel, 892 S.W.2d 881, 886 (Tex. 1998).
          Inquiries involving the discovery rule usually entail questions for the trier of fact. 
Childs, 974 S.W.2d at 44. However, the commencement of the limitations period may be
determined as a matter of law if reasonable minds could not differ about the conclusion to
be drawn from the facts in the record. Id. 
          The discovery rule and fraudulent concealment are distinct concepts that exist for
different reasons. See Wagner & Brown, Ltd., 58 S.W.3d at 736. The fraudulent
concealment doctrine resembles equitable estoppel. Id. Proof of fraudulent concealment
suspends the running of limitations until such time as the plaintiff learned of, or should
have discovered, the deceitful conduct or the facts giving rise to the cause of action. Earle
v. Ratliff, 998 S.W.2d 882, 888 (Tex. 1999). In other words, fraudulent concealment will
toll limitations until the plaintiff discovers the fraud or could have discovered the fraud with
reasonable diligence. Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001). Accrual of the
cause of action is deferred because a person cannot be permitted to avoid liability for his
actions by deceitfully concealing wrongdoing until limitations has run. S.V. v. R.V., 933
S.W.2d 1, 7 (Tex. 1996). Fraudulent concealment may be shown by direct or
circumstantial evidence. Id. 
          A party asserting fraudulent concealment as an affirmative defense to the statute
of limitations has the burden to raise it in response to the summary judgment motion and
to come forward with summary judgment evidence raising a fact issue on each element of
the fraudulent concealment defense. KPMG Peat Marwick, 988 S.W.2d at 749. The
elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the
defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort;
and (4) the plaintiff's reasonable reliance on the deception. Mitchell Energy Corp. v.
Bartlett, 958 S.W.2d 430, 439 (Tex. App.–Fort Worth 1997, pet. denied).
          Both the discovery rule and fraudulent concealment require the plaintiff to use
diligence in discovering its injury. See S.V., 933 S.W.2d at 6 (discovery rule); Casey v.
Methodist Hosp., 907 S.W.2d 898, 903 (Tex. App.–Houston [1st Dist.] 1995, no writ)
(fraudulent concealment).
          According to Boyles’s summary judgment evidence, Boyles acquired his overriding
royalty interest from the landowners in 1993 and sold these interests on June 1, 1995, for
the sum of $550,000. Boyles first heard about the Emerald Oil litigation and first
discovered that Exxon had sabotaged the wells, on or about January 10, 2000 and filed
suit several months thereafter. Boyles testified that, prior to that date, he had no
knowledge of the property owners’ claims, Emerald’s claims, or Exxon’s false filings with
the railroad commission. According to Boyles’s affidavit, before he sold the override in
1995, “the only knowledge’ of Emerald’s reentry and reworking operations in the boreholes
of wells” was through “one or more telephone conversations” wherein Tommy Yokem of
Emerald informed him that “Emerald had encountered difficulties” in reentering “[two or
three] of the Exxon/O’Connor Wells.” According to Boyles, “of the wells that they had
reentered, they had multiple problems.” Boyles also acknowledged hearing of reentry
problems from his engineer partner, various people in Refugio, and Arnie Cardona. 
          Boyles was present at the first reentry, and saw “Parted casing, I believe, shifted
casing; cuts – I think cuts not being where they were supposed to be.” Boyles discussed
these problems with others on location: “Why things were happening the way they were
happening; what’s causing this; why is it causing that. Well, I think this and I think that.”
          Boyles did not have direct communications with anyone at Emerald regarding lease
operations during the time he owned the override. Boyles did not inquire about the size
of his royalty payments because it “was fruitless to do that,” and he “could monitor at the
Railroad Commission what they were doing.” Boyles testified that he was not “necessarily”
satisfied at the reentry results, but did not question Emerald as to its procedures or
operations
           Boyles testified that he sold his override because “the owners of – the Saglio
ownership wanted me out of the override. They made me an offer, and based on the
problems that I saw and the instability of what was going on, I sold my interest back to
Saglio for what I consider a reduced value.” Boyles testified that, following the sale, he
was neither contacted by any party regarding the wells nor did he have any subsequent
communications with any party to the sale until on or about January 10, 2000 when he was
informed of the existence of the related litigation. 
          Assuming, without deciding, that the discovery rule applies in this case, we conclude
that Boyles’s own testimony establishes that he, in the exercise of reasonable care and
diligence, should have discovered his injury in 1995, that is, more than four years prior to
the date that he filed suit. Boyles’s testimony shows that by 1995, a representative from
Emerald had informed him that Emerald had encountered difficulties in reentering two or
three of the Exxon/O’Connor Wells, and that “various people” in Refugio told him that
Saglio had problems reentering the wells, as had his engineer partner. Boyles was present
at the first reentry, and knew at that time that the reentry was difficult due to “parted casing,
shifted casing, and cuts not being where they were supposed to be.” During the reentry
process, Boyles specifically discussed potential causes for the problems with Emerald’s
personnel. Boyles’s own testimony affirmatively establishes his experience and expertise
in oil and gas production. Nevertheless, Boyles could have, but did not, examine the filings
with the railroad commission, nor did he ask about the royalty amounts he was receiving
under his agreement with Emerald. Instead, the evidence establishes that Boyles sold his
override at a reduced value based on problems and instability that he saw in the reentry
process.
           In avoidance of limitations, Boyles argues at trial and on appeal that he was not
aware of the related litigation until January 2000. However, the issue is not when he
learned of the related lawsuit, but when he knew of facts, conditions, or circumstances that
would cause a reasonable person to make inquiry leading to the discovery of his cause of
action. See Borderlon v. Peck, 661 S.W.2d 907, 909 (Tex. 1983).
          Our analysis and conclusion is no different regarding Boyles’s claim that Exxon
fraudulently concealed his cause of action. In other words, as with the discovery rule,
Boyles could have discovered the alleged fraud with reasonable diligence. Shah, 67
S.W.3d at 841. This is, in the law, equivalent to knowledge of the cause of action for
limitations purposes. Mitchell Energy Corp., 958 S.W.2d at 439.
 Conclusion
          In sum, reasonable minds could not differ about when Boyles knew or should have
known of facts that in the exercise of reasonable diligence would have led to the discovery
of his injury. Childs, 974 S.W.2d at 46. Accordingly, the judgment of the trial court is
affirmed.

           



 


                                                                                                                                 
                                                                                      Rogelio Valdez,
                                                                                      Chief Justice

Memorandum Opinion delivered and filed
this 10th day of February, 2005.