**OASIS OIL CORPORATION and Oasis Transportation and Marketing Corporation, Appellants,**

v.

**KOCH REFINING COMPANY L.P., Appellee.**

No. 13–00–243–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 23, 2001.

Rehearing Overruled Nov. 8, 2001.

Michael Branisa, Michael J. Zomcik, Robert C. Tarics, Tarics & Carrington, Houston, for appellants.

Debra E. Ibarra, Marvin C. Moos, Smith, Rymer, Moore & Moos, Nathan M. Rymer, Carlson, Smith & Rymer, Houston, for appellees.

Before Chief Justice VALDEZ and Justices YAÑEZ and RODRIGUEZ.

## OPINION

ROGELIO VALDEZ, Chief Justice.

Appellants, Oasis Oil Corporation and Oasis Transportation and Marketing Corporation ("Oasis"), sold a product manufactured by appellee Chemical Process & Production, Inc. ("CP & P"), to Koch Refining Company ("Koch"). The product allegedly damaged Koch's refinery. Koch brought suit against Oasis, which sought indemnity from CP & P under chapter 82 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001–82.006 (Vernon 1997). CP & P filed both traditional and no-evidence motions for summary judgment, and the trial court granted summary judgment in favor of CP & P. The dispositive question in this appeal is whether Oasis, the seller of the product, was entitled to indemnity from CP & P, the manufacturer, against loss arising from the product liability action instituted by Koch. Because we find that the summary judgment cannot stand on any ground asserted by CP & P, we reverse and remand.

*Factual and Procedural Background*

■ In reviewing the summary judgment record, the appellate court must resolve all factual disputes and indulge all inferences in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Accordingly, although there are numerous factual disputes in this case, the following statement of facts resolves those conflicts in favor of Oasis.

The main parties in the underlying litigation were Whytecliff, CP & P, Oasis, and Koch. Whytecliff owned a large quantity of a naphtha product, which is a hydrocarbon, and Whytecliff contracted with CP & P to process that naphtha product for sale. Whytecliff's naphtha product was unusually high in organic chlorides, which can damage processing facilities by forming hydrochloric acid during high-temperature processing. Accordingly, Whytecliff had the levels of organic chlorides tested, and provided that testing data to CP & P. Despite the high organic chloride levels, CP & P nevertheless agreed to accept a fee in exchange for distilling Whytecliff's naphtha product. One of the distillates from CP & P's processing was a substance called "overheads," also referred to as crude naphtha. CP & P's distillation process increased the concentration of the harmful organic chlorides in the crude naphtha overheads by four fold.

CP & P then contacted Oasis and asked if Oasis was interested in buying Whytecliff's crude naphtha overheads. Oasis is an oil gatherer that sells hydrocarbons to Koch, which then further refines the petrochemicals. When CP & P contacted Oasis about buying the crude naphtha, CP & P provided Oasis with a certified chemical analysis that identified the product as crude naphtha with certain additional distillates and by-products. This certified chemical analysis CP & P provided to Oa-

sis did not reveal the presence of organic chlorides in the crude naphtha, and CP & P did not provide Oasis with the chemical analysis of the organic chloride levels that Whytecliff had provided to CP & P. Oasis purchased the crude naptha overheads, then sold them to Koch.

Oasis delivered the crude naphtha with high organic chloride levels into Koch's pipeline system. Subsequently, Koch claimed that the high organic chloride levels damaged Koch's plant, and Koch consequently sued Oasis. No party disputes that Koch's claims against Oasis fell within the definition of a product liability action under chapter 82 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001–82.006 (Vernon 1997). Ultimately, Oasis settled with Koch for $700,000 and brought a claim for indemnity against CP & P under chapter 82. *See id.* at § 82.002 (manufacturer's duty to indemnify).

CP & P filed a conventional motion for summary judgment, which was denied. CP & P later filed a no-evidence motion for summary judgment that also reasserted its conventional motion for summary judgment, and the trial court granted the motion for summary judgment without specifying the basis for its ruling. This summary judgment was then appealed to this Court.

*Standard of Review*

■ The function of a summary judgment is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *see also Chambers v. City of Lancaster,* 843 S.W.2d 143, 146 (Tex. App.—Dallas 1992), *aff'd in part, rev'd in part on other grounds,* 853 S.W.2d 650 (Tex.App.1993) (citing *Gulbenkian,* 252 S.W.2d at 931). The Texas Supreme Court has established the following stan-

dards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon,* 690 S.W.2d at 548–49.

■ The summary judgment movant must establish its entitlement to summary judgment as a matter of law on each cause of action alleged. *Clark v. First Nat'l Bank of Highlands,* 794 S.W.2d 953, 955 (Tex.App.—Houston [1st Dist.] 1990, no writ); *see also* Tex.R. Civ. P. 166a(c). When the defendant is the movant, summary judgment is proper only if the plaintiff cannot succeed upon any theory pleaded as a matter of law. *Chambers,* 843 S.W.2d at 146 (citing *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex. Civ.App.—Amarillo 1979, no writ)). The defendant must either conclusively negate an element from each of the plaintiff's causes of action or conclusively establish every element of an affirmative defense. *Chambers,* 843 S.W.2d at 147 (citing *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972)). In response, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on the challenged elements of the plaintiff's case or by showing that the defendant's legal position is unsound. *Chambers,* 843 S.W.2d at 147 (citing *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982); *Torres v. Western Cas. &*

*Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *Estate of Devitt,* 758 S.W.2d 601, 602 (Tex. App.—Amarillo 1988, writ denied)).

When a motion for summary judgment is based on no-evidence grounds, the Texas Supreme Court has ordered that the courts must apply these rules in light of the following additional caveats:

1. the no-evidence motion can only be brought against "a claim or defense on which an adverse party would have the burden of proof at trial," Tex.R. Civ. P. 166a(i);
2. "the motion must state the elements as to which there is no evidence," *Id.;*
3. "the motion must be specific in challenging the evidentiary support for an element of a claim," Tex.R. Civ. P. 166a cmt.;
4. "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case," *Id.;*
5. "its response need only point out evidence that raises a fact issue on the challenged elements," *Id.;* and
6. "the respondent is not required to marshal its proof." *Id.*

"The trial court may not grant a no-evidence summary judgment if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Zapata v. The Children's Clinic,* 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, no pet.).

*Applicable Law*

In product liability actions, Texas law clearly distinguishes between negligence claims based on conduct and strict liability claims based on products. In the *American Tobacco Co. v. Grinnell* case, for example, the Texas Supreme Court explained the distinction as follows:

negligent design and manufacturing claims are conceptually distinguishable from the strict liability claims. While strict liability focuses on the condition of the product, "[n]egligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production." Negligent design and manufacturing claims are predicated on the existence of a safer alternative design for the product.

*Amer. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 437 (citing *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384–85 (Tex.1995); *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871–72 (Tex.1978)).

▮ When a products liability action is submitted to the jury on a theory of negligent manufacture or negligent design, the defendant is held liable based on proof that its negligent conduct proximately caused the claimant's damages. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 836–37 (Tex.2000). In contrast, when a products liability action is submitted to the jury on a strict liability theory, the defendant is held liable based on proof that it placed the product into the stream of commerce and upon further proof that the defective product was a producing cause of the claimant's damages. *See Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 613 (Tex.1996). This distinction is critical because strict liability claims are based on the product and, therefore, strict liability claims may be asserted against "innocent sellers"[1] who have no culpable responsibility except for their role as an intermediary seller that merely received a defective product and unknowingly sold it down the stream of commerce. *See generally id.*

To balance the right of consumers to sue any party who places a product into the stream of commerce against the potential unfairness of subjecting significant financial liability upon an "innocent seller," the Texas Legislature created a statutory right to indemnification. *See Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 868–69 (Tex.1999). The statute protects innocent sellers; it places primary liability on manufacturers, who are usually in a better position to recognize and remedy defects. *Graco, Inc. v. CRC, Inc. of Texas,* 47 S.W.3d 742, 745, No. 05–98–01438–CV, 2001 Tex.App. LEXIS 2969, *6–7 (Tex.App.2001, no pet.); *see Fitzgerald,* 996 S.W.2d at 868–69.

The seller's claim for indemnity under chapter 82 of the civil practice and remedies code is a statutory cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001–82.006 (Vernon 1997). Like other statutory causes of action, the elements of the cause of action must track the statute. *See Borneman v. Steak & Ale, Inc.,* 22 S.W.3d 411, 412 (Tex.2000)(citing *Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994)). The statute defines the claim for indemnity as follows:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.... The duty to indemnify under this section ... applies without regard

---

1. Plaintiffs in strict liability cases are given the right to sue any party in the stream of commerce—even "innocent sellers"—based on the public policy that consumers may not know the identity of a product's manufacturer or may not have legal recourse against such manufacturers, but the seller of the product is generally more easily identified and subjected to the jurisdiction of local courts.

to the manner in which the action is concluded.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a), (e) (Vernon 1997). The terms "manufacturer," "seller," "loss," "products liability action" are all expressly defined by statute:

> "Manufacturer" means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any part thereof in the stream of commerce.
>
> "Seller" means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.... [A] wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.
>
> "[L]oss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.... A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification....
>
> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of ex-

press or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001(2), (3), (4), 82.002(b), (g) (Vernon 1997).[2]

*Analysis*

■ In March, the Texas Supreme Court issued an opinion in *Meritor Automotive, Inc. v. Ruan Leasing Co.*, in which the supreme court holds that a manufacturer must indemnify an innocent seller for the seller's costs to defend an unsuccessful negligence claim, even though that claim is asserted independently of a product liability claim. *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001). *Meritor* is relevant to the instant case because it clearly indicates that the manufacturer has the burden of proof to avoid the duty to indemnify an innocent seller. "[W]hile the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent conduct was a cause of the plaintiff's injury." *Id.*

■ Under Texas Rule of Civil Procedure 166a(i), CP & P could only bring a no-evidence motion for summary judgment on a claim or defense on which Oasis would have the burden of proof at trial. Under *Meritor*, CP & P bears the burden of proof to avoid indemnifying Oasis, thus a no-evidence motion would not be appropriately granted on this ground.

Moreover, CP & P's motion appears deficient on other grounds. By filing a no-evidence motion for summary judgment, CP & P assumed the duty to expressly

**2.** The statutory scheme also includes other provisions concerning notice to the manufacturer, the deemed reasonableness of certain losses, and confirming that the statutory claim supplements any other duty to indemni-fy. It is unclear whether the notice provision might be considered an element of the statutory claim for indemnity, but we need not decide that issue because it is irrelevant to this case.

state which elements of Oasis's cause of action it was challenging. In the no-evidence portion of its motion for summary judgment, CP & P argued that there was "no evidence of causation and chain of custody," "no evidence of defect," and "no evidence of other elements." None of these three arguments is a proper no-evidence challenge to a claim for indemnity to a seller under chapter 82.

■ First, the traditional notion of causation is not an element of the seller's statutory claim for indemnity. *See id.* Instead of proving either proximate or producing causation in the traditional manner, a claimant need only prove that it is a statutory seller which suffered a qualifying loss in a products liability action as defined by statute and that the defendant qualifies as a statutory manufacturer. *See id.* CP & P's appellate brief focuses extensively on the alleged lack of evidence of "but for" causation and the alleged lack of evidence of foreseeability, but these two constituent components of proximate cause are not elements of Oasis's statutory claim for indemnification. Indeed, foreseeability is not even an element of a strict liability claim that generally underlies such a claim for indemnification. *See, e.g., Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995)(foreseeability is an element of proximate cause, as underlies a negligence action, but is not an element of producing cause, as underlies a strict liability action).

■ Second, neither proof regarding the product's chain of custody nor proof of a product defect is an element of the seller's statutory claim for indemnity. The statutory scheme expressly relieves the seller of obtaining a defect finding by authorizing indemnification regardless of "the manner in which the action is concluded." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e)(1); *see also Meritor,* 44 S.W.3d

at 91. Clearly, if a statutory seller's pretrial settlement of a qualifying products liability action is reasonable, then the statutory seller is entitled to indemnification from the statutory manufacturer. *See Fitzgerald,* 996 S.W.2d at 867. While the state of evidence concerning the product's chain of custody and its defect might be relevant to the issue of the reasonableness of damages, CP & P has not challenged the element of reasonableness. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(b) (Vernon 1997) (requiring generally that losses and damages be reasonable). Rule 166a(i) strictly requires that "the motion must be specific in challenging the evidentiary support for an element of a claim." TEX.R. CIV. P. 166a(i). We will not dilute this requirement by reading challenges to the "chain of custody" and the "defect" broadly as a challenge to the evidence of reasonableness.

■ Finally, the third of CP & P's arguments—that there was "no evidence of other elements"—is clearly insufficient as a matter of law to raise any duty to respond under Rule 166a(i) because this is nothing more than a prohibited "conclusory" motion or "general" no-evidence challenge to an opponent's case. TEX.R. CIV. P. 166a cmt. On its face, this sort of prohibited rule 166a(i) challenge fails to meet the requirement that "the motion must be specific in challenging the evidentiary support for an element of a claim." *See id.* Accordingly, CP & P's motion did not meet the requirements of the rule and the trial court could not have appropriately granted summary judgment on that ground.

### Traditional Motion for Summary Judgment

Because the trial court granted CP & P's motion for summary judgment without specifying the grounds for its ruling, the summary judgment will be upheld if any of

the theories advanced by CP & P are meritorious. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex. 1993). In this case, CP & P expressly incorporated by reference its traditional motion for summary judgment, previously filed and denied by the trial court, into its no-evidence motion for summary judgment. Assuming, without deciding, that such incorporation by reference properly allows review, *see Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 700 (Tex. App.—Corpus Christi 2001, no pet.) (allows incorporation by reference of other co-defendant's motions for summary judgment); *but see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993)(motion for summary judgment must expressly present grounds for judgment), none of CP & P's traditional bases for summary judgment suffice to support the summary judgment.

CP & P premised its traditional motion for summary judgment on three separate grounds: (1) it was not liable because it was not a manufacturer and did not own the product it processed for Whytecliff; (2) it owed no duty to Koch because it was not foreseeable that a product CP & P manufactured would be sold to Koch; and (3) Oasis committed a criminal act which superceded any responsibility CP & P had for the product it manufactured.

■ In terms of the first ground, under product liability law, liability attaches to a "processor" of products, and not merely manufacturers, and the statute does not require ownership of the relevant goods. *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.001(4) (Vernon 1997).

■ The second ground fails for reasons discussed above in the no-evidence context, that is, foreseeability is not a requirement in an action for indemnification under the civil practice and remedies code.

*Meritor*, 44 S.W.3d at 91; *see Union Pump Co.*, 898 S.W.2d at 775.

■ The third ground raised by CP & P, a criminal intervening act committed by Oasis, falls within the exception to the manufacturer's duty to indemnify the seller. *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.002(a) (Vernon 1997) (manufacturer shall indemnify seller except for any loss "caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable"). Specifically, CP & P alleges that Oasis committed a criminal act by putting naptha rather than crude oil into Koch's pipelines. In reviewing the summary judgment evidence, we must indulge every reasonable inference in favor of Oasis, and resolve any doubts in its favor. *Nixon*, 690 S.W.2d at 548–49. Applying this standard to the evidence at hand, we conclude that CP & P has failed to conclusively establish that Koch's loss was caused by Oasis's alleged criminal act.

Accordingly, we reverse the summary judgment in favor of CP & P and remand the cause for further proceedings.