NUMBER 13-02-671-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI-EDINBURG
____________________________________________________

SSP PARTNERS and METRO NOVELTIES, INC.,     Appellants,

v.

GLADSTRONG INVESTMENTS (USA)
CORPORATION,                                                             Appellee.
___________________________________________________

On appeal from the 332rd District Court 
of Hidalgo County, Texas.
____________________________________________________

OPINION 

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Castillo

        This is an indemnity case. The trial court granted appellee Gladstrong Investments'
no-evidence summary-judgment motions against appellants SSP Partners and Metro
Novelties. Asserting numerous issues, SSP and Metro appeal the judgments. SSP also
appeals an award of guardian ad litem fees. We reverse and remand. 
I. History of the Case
         On January 9, 2001, a fire caused by an allegedly defective lighter killed Joshua
Castillo. Joshua‛s two brothers, Matthew and Christopher, were also injured in the fire. 
The children's parents, Oscar and Arissa Castillo, claimed that Oscar's sister, Sally, bought
the offending lighter at a Circle K store. Oscar and Arissa Castillo brought a products
liability action against SSP Partners, Inc.


 and Gladstrong Investments (USA) Corporation
("Gladstrong USA").


 SSP then sued Metro Novelties, as supplier of the lighters, for
indemnity. Additionally, SSP and Metro both sued Gladstrong USA for indemnity. 
          Gladstrong USA filed no-evidence motions for summary judgment against SSP and
Metro on their indemnity claims, alleging there was no evidence that it was the
manufacturer or supplier of the cigarette lighter.


 The trial court granted Gladstrong's no-evidence motions for summary judgment against both SSP and Metro. 
         SSP and Metro also sued Tianjin Sico Lighters, Co., Ltd. ("Tianjin"), the alleged
manufacturer of a component of the lighter. SSP and Metro also sought but failed to
secure leave of court to sue the parent company of Gladstrong USA, Gladstrong
Investments, Ltd. ("Gladstrong Hong Kong").


 Claims against Tianjin were severed.
         On October 24, 2002, Gladstrong USA settled with the Castillos. On the same date,
the trial court granted the no-evidence summary-judgment motions. On October 28, 2002,
the Castillos, SSP, and Metro proceeded to trial. The jury returned a verdict favorable to
the Castillos. The trial court judgment memorialized: (1) the no-evidence summary
judgments; and (2) the jury verdict. SSP, on appeal, seeks reversal of the summary
judgment adverse to it and remand of its indemnity claim for trial on the merits. SSP
presents the following issues for review: 
(1) Whether the trial court erred in granting a no-evidence summary-judgment
motion denying: (a) statutory indemnity to SSP on its claim that Gladstrong USA
was either the manufacturer or the supplier of the lighter; and (b) common law
indemnity. 
 
(2) Whether the guardian ad litem fees were reasonable.

          On appeal, Metro seeks reversal of the summary judgment adverse to it, and
presents the following issues for review: 
(1) Whether the trial court erred in granting a no-evidence summary-judgment
motion that Metro take nothing on its indemnity claims against Gladstrong USA; 
 
(2) Whether, under traditional summary-judgment motion standards, Gladstrong
USA's evidence proved Gladstrong USA was neither a manufacturer nor a supplier
of the lighter; 
 
(3) Whether Metro's proof showed that it was entitled to indemnity under Texas
Civil Practice & Remedies Code § 82.002 against Gladstrong USA because
Gladstrong USA is: (a) a "manufacturer" under §81.001(4); (b) jointly liable with
Gladstrong Hong Kong under the "single business enterprise" theory of liability; and
(c) deemed to be a manufacturer under 15 U.S.C. §2052(a)(4); 
 
(4) Whether Metro's proof showed it was entitled to common law indemnity
because Gladstrong USA was a supplier, a manufacturer, or an apparent
manufacturer; and 
 
(5) Whether Gladstrong USA waived objections to Metro's summary-judgment
evidence.

II. The Summary Judgments 
          On October 24, 2002, the same day SSP filed its response to Gladstrong USA’s no-evidence summary-judgment motion, Gladstrong USA filed a reply objecting to SSP’s
evidence.


 After a hearing on the same date, the trial court granted Gladstrong USA's
motion. On October 28, 2002, Gladstrong USA filed a virtually identical no-evidence
motion for summary judgment as to Metro. Metro filed its response, which was virtually
identical to SSP’s response and included the same evidence, on December 12, 2002. 
Gladstrong USA replied to Metro’s response on February 6, 2003. That reply mirrored the
arguments raised in opposition to SSP’s claim for indemnity. To the reply, Gladstrong USA
attached deposition excerpts. On February 12, 2003, Gladstrong USA filed objections to
Metro’s evidence which echoed the objections made to SSP’s evidence. The trial court
held the hearing on the motion for summary judgment on February 13, 2003 and granted
the motion. Both the summary judgments against SSP and against Metro were
memorialized in the court's final judgment dated February 13, 2003. 
           In each motion, Gladstrong USA asserted that there was no evidence as a matter
of law that Gladstrong USA was a manufacturer or supplier of the lighter: (1) to Metro, or
(2) in the marketing chain. To its motion against SSP, Gladstrong USA attached a copy of
SSP’s live amended answer, including its cross-claim, and SSP’s third-party petition
against Tianjin.


 To its motion against Metro, Gladstrong USA attached a copy of Metro’s
live cross-claims against Gladstrong USA and Metro’s live cross-claim against third-party
defendant Tianjin. 
          The fact the answers and petitions were attached to the no-evidence motions for
summary judgment is of no consequence. Pleadings do not constitute summary judgment
proof. Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (citing
Hidalgo v. Sur. Sav. & Loan Ass'n., 462 S.W.2d 540, 543 (Tex. 1971)). In addition, the
Texas Supreme Court has stated that it disapproves of decisions that hold or imply that,
if a party attaches evidence to a motion for summary judgment, any request for summary
judgment under Rule 166a(i) will be disregarded. Binur v. Jacobo, 135 S.W.3d 646, 650-51 n.11 (Tex. 2004). 
          Each motion specifically pointed to Texas Rule of Civil Procedure 166a(i) for its
basis. Tex. R. Civ. P. 166a(i). Each motion states "there is no evidence as a matter of law
that Defendant Gladstrong was the manufacturer of the cigarette lighter made the basis
of this lawsuit, nor is there evidence that Gladstrong was a supplier of the lighter in
question to Circle K." 
           We conclude that the two referenced summary-judgment motions constituted no-evidence motions and not traditional motions for summary judgment. 
 A. No-Evidence Summary-Judgment Standard of Review
          The standard of review for the grant of a motion for summary judgment
is determined by whether the motion was brought on no-evidence or traditional grounds. 
See Tex. R. Civ. P. 166a(i), (c); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771
(Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence motion for
summary judgment asserts there is no evidence of one or more essential elements of
claims upon which the opposing party would have the burden of proof at trial. Tex. R. Civ.
P. 166a(i). A no-evidence motion for summary judgment is properly granted only if the
non-movant fails to bring forth more than a scintilla of probative evidence to raise a
genuine issue of material fact as to the challenged element of the claims. See id.; Mulvey
v. Mobil Producing Tex. & N.M. Inc., 137 S.W.3d 594, 605 (Tex. App.–Corpus Christi,
2004, no pet.) (citing AMS Constr. Co. v. Warm Springs Rehab. Found., 94 S.W.3d 152,
159 (Tex. App.–Corpus Christi 2002, no pet.)).
B. Summary-Judgment Evidence
          SSP attached evidence to its response to Gladstrong USA’s no-evidence motion for
summary judgment. The evidence included: (1) deposition excerpts of Arissa, Sally, and
Oscar Castillo;(2) deposition excerpts of Teresa Truscelli of the Uniform Code Council
(UCC) with attached application of and correspondence with Gladstrong Hong Kong; (3)
deposition excerpts of Welsley Li, principal representative of Gladstrong USA, with
attached safety recall notice and information from Gladstrong Hong Kong’s internet home
page; (4) the affidavit of Ben Zhu, counsel for Tianjin, with attached business records of
Tianjin; (5) deposition excerpts of Kin Chung Li, President of Gladstrong Hong Kong and
Gladstrong USA with accompanying business records of Gladstrong USA; and (6)
photographs of the lighter. Metro attached the same evidence to its summary-judgment
response.
 
C. Waiver
          In its fifth issue, Metro asserts that Gladstrong USA waived its objections to Metro's
summary-judgment evidence because: (1) it failed to obtain a ruling and failed to object
to the absence of a ruling; (2) any implicit ruling must be deemed to have overruled
Gladstrong USA's objection; (3) the objections were untimely; and (4) Metro’s summary-judgment evidence included five named exhibits, properly authenticated as business
records of the Uniform Code Council, containing applications which reflected Gladstrong
Hong Kong’s admission that it manufactured the lighter in question. 
          Gladstrong USA objected to exhibits E-1 through E-4, stating those documents were
not properly authenticated and constituted hearsay.


 These exhibits were attached to the
affidavit of Teresa Truscelli of the UCC.


 Exhibit E-1 is titled "Application for Universal
Product Code and Uniform Code Council, Inc. Membership." Exhibit E-2 is a letter from
the UCC to Gladstrong Hong Kong regarding UPC manufacturer identification numbers. 
E-3 is a letter from Gladstrong Hong Kong to the UCC Council inquiring as to change of
UPC number. E-4 is a series of communications between Gladstrong Hong Kong and the
UCC Council regarding inquiries about numbers for an expanded line of lighters. 
          Gladstrong USA objected to exhibit F-2 as not being properly authenticated and
constituting hearsay evidence. Exhibit F-2 is a copy of information posted on Gladstrong
Hong Kong’s internet home page. The exhibit was attached to the deposition excerpt of
Wesley Li of Gladstrong Hong Kong. Gladstrong USA also objected to the affidavit of Ben
Zhu, Tianjin’s attorney, because it was not based on personal knowledge. In addition,
Gladstrong USA objected because Metro did not attach any exhibits to affidavits.
Gladstrong USA objected to exhibits H-3 through H-5 because the documents were not
properly authenticated and constituted hearsay. These documents were exhibits at the
depositions of Kin Chung Li. Exhibit H-3 is another hard copy of the items appearing on
the Gladstrong website, showing pictures of the lighters. H-4 is a letter to the Hong-Kong
Article Numbering Association, requesting product numbers for Gladstrong products. H-5
is a description and order notification letter from Gladstrong to Sico Lighters Co., Ltd. 
          A trial court does not implicitly sustain, by granting the motion, a summary judgment
movant's objections where there is no ruling or order. Jones v. Ray Ins. Agency, 59
S.W.3d 739, 752 (Tex. App.–Corpus Christi 2001, pet. denied). For there to be an implicit
ruling on a party's objection to summary-judgment evidence, some indication must appear
in the record or in the summary judgment itself, other than the mere granting of the
summary judgment, that the trial court ruled on the objection. Id. at 753 (citing Tex. R.
App. P. 33.1(a)(2)(A) and holding that a trial court must either expressly or implicitly rule
on objection for complaint to be preserved for review); see also Columbia Rio Grande Reg'l
Hosp. v. Stover, 17 S.W.3d 387, 395 (Tex. App.—Corpus Christi 2000, no pet.). 
          In order to preserve any error of the trial court in ruling on its objections, Gladstrong
USA was required to obtain a written order on the ruling. See Ray Ins. Agency, 59 S.W.3d
at 753. Metro urges that appellee did not do so. The record in this case does not reveal
an order on the objections. While the final judgment in this case included a "Mother
Hubbard" clause, the presence or absence of a “Mother Hubbard” clause in a summary
judgment is of no import to show the trial court implicitly ruled on objections. See Well
Solutions, Inc. v. Stafford, 32 S.W.3d 313, 317 (Tex. App.–San Antonio 2000, no pet.)
(stating that a Mother Hubbard clause operates on claims, not objections to summary
judgment evidence). We conclude that Gladstrong USA did not preserve error for appeal. 
We sustain Metro’s fifth issue. 
D. The Summary-Judgment Issues1. Propriety of "No-Evidence" Summary Judgment
          In its second issue, Metro argues that a "no-evidence" summary judgment was
improper because Gladstrong USA retained the burden of proof to avoid the duty to
indemnify. When a motion for summary judgment is based on no-evidence grounds, the
Texas Supreme Court has ordered that the courts apply these rules in light of the following: 
the no-evidence motion can only be brought against a claim or defense on which an
adverse party would have the burden of proof at trial under Texas rule of civil procedure
166a(i). Oasis Oil Corp. v. Koch Ref. Co. L.P., 60 S.W.3d 248, 252 (Tex. App.–Corpus
Christi 2001, pet. denied); see Tex. R. Civ. P. 166a(i). Gladstrong USA counters that the
claimant retained the burden to prove Gladstrong USA is a statutory seller which suffered
a qualifying loss in a products liability action, as defined by statute, and that the defendant
qualifies as a statutory manufacturer. See Oasis Oil Corp., 60 S.W.3d at 255 (listing
elements of statutory claim for indemnity in a product liability case). Gladstrong USA
asserts the cases cited by SSP to shift the burden relate to the exception to the statutory
rule–they stand for the proposition that when a manufacturer seeks to avoid liability to a
seller, the manufacturer bears the burden to show that the seller is not innocent and that
its independent conduct resulted in the plaintiff's injury. See id. at 254. Finally, Gladstrong
USA argues that a seller retains at all times the burden to prove that a defendant to an
indemnity claim qualifies as a manufacturer. 
          We conclude that establishing Gladstrong USA’s status as the manufacturer is an
element of SSP’s and Metro’s claim for indemnity on which they bore the burden of proof. 
See id. at 255. Therefore, Gladstrong USA properly brought no-evidence summary-judgment motions against SSP and Metro on this basis. We overrule Metro’s second
issue.
2. Statutory Indemnity
          Gladstrong USA moved for and was granted summary judgment in all respects,
including as to SSP and Metro's claims for statutory indemnity pursuant to section 82.002
of the civil practice and remedies code. Tex. Civ. Prac. & Rem. Code Ann. §82.002 (Vernon
1997). SSP and Metro each contend on appeal that there is evidence regarding the
availability of statutory indemnity. This section of the law provides: 
§ 82.002. Manufacturer's Duty to Indemnify
(a) A manufacturer shall indemnify and hold harmless a seller against loss
arising out of a products liability action, except for any loss caused by the
seller's negligence, intentional misconduct, or other act or omission, such as
negligently modifying or altering the product, for which the seller is
independently liable.

(b) For purposes of this section, "loss" includes court costs and other
reasonable expenses, reasonable attorney fees, and any reasonable 
damages.

(c) Damages awarded by the trier of fact shall, on final judgment, be deemed
reasonable for purposes of this section.

(d) For purposes of this section, a wholesale distributor or retail seller who
completely or partially assembles a product in accordance with the
manufacturer's instructions shall be considered a seller.

(e) The duty to indemnify under this section:

(1) applies without regard to the manner in which the action is
concluded; and

(2) is in addition to any duty to indemnify established by law,
contract, or otherwise.

(f) A seller eligible for indemnification under this section shall give reasonable
notice to the manufacturer of a product claimed in a petition or complaint to
be defective, unless the manufacturer has been served as a party or
otherwise has actual notice of the action.

(g) A seller is entitled to recover from the manufacturer court costs and other
reasonable expenses, reasonable attorney fees, and any reasonable
damages incurred by the seller to enforce the seller's right to indemnification
under this section. 
 
Tex. Civ. Prac. & Rem. Code Ann. §82.002 (Vernon 1997). 
          As this appeal was taken from a no-evidence summary judgment, the non-movants,
SSP and Metro, had the burden to produce at least a scintilla of evidence as to every
element of the claim. Mulvey, 147 S.W.3d at 605. Therefore, SSP and Metro had the
burden to show that: (1) SSP and Metro were statutory sellers; (2) they suffered a
qualifying loss; (3) the loss was suffered in a products liability action as defined by statute;
and (4) Gladstrong USA qualifies as a statutory manufacturer. Oasis Oil Corp., 60 S.W.3d
at 255. Gladstrong USA’s motions both urge "there is no evidence as a matter of law that
Defendant Gladstrong was the manufacturer of the cigarette lighter, nor is there evidence
that Gladstrong was a supplier of the lighter in question to [SSP]."
          SSP and Metro have each argued that Gladstrong USA was a manufacturer of the
lighter under section 82.001(4) of the civil practice & remedies code. Tex. Civ. Prac. &
Rem. Code Ann. §82.001(4) (Vernon 1997). Under section 82.001(4), a "manufacturer" is
defined as "any person who is a designer, formulator, constructor, rebuilder, fabricator,
producer, compounder, processor, or assembler of any product or any component part
thereof and who places the product or any component part thereof in the stream of
commerce." See id. 
          Evidence presented by SSP and Metro


 reflects that the lighter involved in the fire
was a WAX brand lighter, purchased at a Circle K store. That evidence also reflects that
the lighter exhibited the Uniform Product Code ("UPC") uniquely assigned to Gladstrong
Hong Kong. In addition, evidence shows that: (1) Gladstrong USA is the sole supplier,
distributor, and importer of the WAX lighter into the United States; (2) the sales manager
for Gladstrong USA is Ms. Li, daughter of Gladstrong Hong Kong founder Kin Chun Li; (3)
Ms. Li was involved in discussions with the U.S. Consumer Products Safety Commission
(“CPSC”), after which Gladstrong USA issued a voluntary recall of the WAX lighters; (4)
no companies other than Gladstrong USA and Gladstrong Hong Kong were involved in the
recall; (5) the recall notice was printed on Gladstrong USA letterhead; (6) that notice
included Gladstrong USA’s admission that it had distributed the defective lighters and that
additional letter posters would be forthcoming encouraging customers to mail the lighters
in for a refund; and (7) Gladstrong Hong Kong was identified as the company to which
lighters should be sent, and the company which would issue any refunds.
a. Single Business Enterprise and Statutory Indemnity
          SSP and Metro contend that Gladstrong USA and Gladstrong Hong Kong are a
single business entity, enabling the use of evidence that Gladstrong Hong Kong is the
manufacturer of the lighters to establish that Gladstrong USA is the manufacturer. They
urge that the two Gladstrongs must be held to be a single business entity or an injustice
will result. 
          Summary-judgment evidence reflects that Chung Li is the president of both
Gladstrong USA and Gladstrong Hong Kong, and controls the decisions made by both
companies. Deposition testimony of Mr. Li, and of his daughter, Welsley Li, establishes
the two Gladstrong entities as a family-based operation with offices in the United States
and Hong Kong. The officers of both corporations are the same. Other than Mr. Li's wife
and daughter, there is only one other person employed in the United States. Mr. Li further
testified that Gladstrong USA was established as a means to more efficiently export/import
lighters to the USA, and that such importation is Gladstrong USA’s principal business. 
United States companies order lighters through Gladstrong USA, which forwards those
orders to Gladstrong Hong Kong. Gladstrong USA was entirely capitalized by Gladstrong
Hong Kong. All Gladstrong USA revenues pass directly to Gladstrong Hong Kong. 
Gladstrong Hong Kong funded the costs of the safety recall. With respect to that recall,
Gladstrong Hong Kong hired an engineer to design the safety wheels used to ensure that
the WAX lighters would be safe; Gladstrong Hong Kong also owns the patent for that
safety wheel. Gladstrong Hong Kong directs use of these wheels and in fact designates
how the lighters are to be built. In addition, Gladstrong Hong Kong directed the redesign
of the lighter after the recall so that it would meet U.S. safety standards. Mr. Li admitted
he was aware that Gladstrong Hong Kong was known as a manufacturer of lighters. 
          Additional evidence was offered to show that Gladstrong USA and Gladstrong Hong
Kong are in fact a single business entity. Metro, on appeal, points out that: (1) both
entities have similar names ("Gladstrong Investment Corporation USA" and "Gladstrong
Investment, Limited" ["Gladstrong Hong Kong"]); (2) Gladstrong USA solicits orders for
Gladstrong Hong Kong and collects the latter's money; (3) Gladstrong USA attends trade
shows to promote Gladstrong Hong Kong's lighters; (4) Mr. Li's daughter ran Gladstrong
USA without pay for an extended period of time until it was decided she merited salary
compensation; and (5) Gladstrong Hong Kong described Gladstrong USA's office as a
"branch office." The allocation of profits between the two corporations was unclear. 
          SSP filed a Motion for Leave to File Third Party Petition against Gladstrong Hong
Kong on June 27, 2002. SSP later filed a Motion to join Gladstrong Hong Kong as
Necessary Party, or in the Alternative, Motion to Reconsider SSP Partners' Motion for
Leave to File Third-Party Petition Against Gladstrong Investments, Ltd. Despite these
actions, Gladstrong Hong Kong was never made a party to this case.


 
          Numerous cases support the single business enterprise theory in the context where
both parties have been named as parties to the suit. See S. Union Co. v. City of Edinburg,
129 S.W.3d 74, 85-86 (Tex. 2003) (RGVG, Valero Energy Corporation, Valero
Transmission Company, Valero Natural Gas Company, and Reata Industrial Gas Company
operated as a single business enterprise but were all named as parties to the case); 
Bridgestone Corp. v. Lopez, 131 S.W.3d 670, 676 (Tex. App.–Corpus Christi 2004, pet.
granted, judgm’t vacated w.r.m.) (appellees' allegations against Bridgestone included
claims that Bridgestone and Firestone were operated as a single business enterprise, but
both were parties in the suit); North Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 119-20 (Tex. App.–Beaumont 2001, pet. denied) (North American Van Lines, Inc., and North
American Van Lines of Texas, Inc. were both named as defendants, as opposing party
sought to have them considered as a single business entity); Castle Tex. Prod. L.P. v.
Long Trusts, 134 S.W.3d 267, 272 (Tex. App.–Tyler 2003, pet. denied) (the Long Trusts
sued Castle Energy, Castle Pipeline, and CEC as defendants, alleging they operated as
a single business enterprise). However, even if this theory were sufficiently supported by
the facts, we did not find, nor were we directed to, any authority supporting this form of
liability where each of the entities alleged to constitute a single business entity was not at
least, at some point, made a party to the case.


 
b. “Apparent Manufacturer” and Statutory Indemnity
          SSP and Metro assert that, even if Gladstrong USA did not actually manufacture the
lighter and cannot be deemed to be the manufacturer by statute, Gladstrong USA is still
liable as the apparent manufacturer (emphasis added). Under this doctrine, one who puts
out, as its own product, chattel manufactured by another is subject to the same liability as
though it were the manufacturer. See, e.g., Sears, Roebuck, and Co. v. Black, 708 S.W.2d
925, 928 (Tex. App.–Eastland 1986, no writ) (holding Sears was not insulated from liability,
where Sears instructed Whirlpool to put Sears' name on a Whirlpool washer even though
it was not manufactured by Sears). 
          There are two ways an actor can put out chattel as his own product: (1) by
appearing to be the manufacturer, and (2) where the chattel appears to have been made
specifically for the actor. Jackson v. Coldspring Terrace Prop. Owners Ass'n, 939 S.W.2d
762, 765 (Tex. App.–Houston [14th Dist.] 1997, writ denied). SSP and Metro assert that,
not only does Gladstrong USA appear to be the manufacturer but also, the evidence
reflects that the lighters were made for, and at the direction of, Gladstrong USA. 
Importantly, summary judgment evidence includes Mr. Li’s admission that he holds
Gladstrong USA out to be the manufacturer so that customers will believe the price is
lower. More than a scintilla of evidence exists to suggest that Gladstrong USA "appeared"
to be the manufacturer.
          Case law prior to the adoption of chapter 82 of the Texas Civil Practice and
Remedies Code addresses numerous circumstances where household-name suppliers
placed their commonly-known name on products they did not manufacture, and were found
to be apparent manufacturers. See Ford Motor Co. v. Mathis, 322 F.2d 267, 273 (5th Cir.
1963) (where the household name “Ford” was present on the truck in question); Sears,
Roebuck & Co., 708 S.W.2d at 928 (where household name "Sears" appeared on washing
machine); Maint. & Equip. Contractors v. John Deere Co., 554 S.W.2d 28, 31-32 (Tex.
Civ. App.–Houston [14th Dist.] 1977, writ dism'd w.o.j.) (where the household name "John
Deere" was displayed on a tractor that was bought from a John Deere retailer). 
          Case law reflects that such liability will not attach where the product is not marketed
under the name of the supplier, if the supplier also has no connection with the final
defective product or its manufacturer. See Stanford v. Dairy Queen Prods. of Tex., 623
S.W.2d 797, 805-06 (Tex. Civ. App.–Austin1981, writ ref’d n.r.e.). In Stanford, the court
noted:
The record establishes as a matter of law that a restaurant employee in Burnet,
Texas 'Dairy Queen' was the literal 'manufacturer' of the sandwich in the sense of
actually assembling the various ingredients of the sandwich, processing them and
preparing the sandwich from its various ingredients. Moreover, [Dairy Queen] was
not the actual vendor of the sandwich . . . . 

Id.; see also Better Beverages, Inc. v. Meschwitz, 643 S.W.2d 502, 504 (Tex.
App.–Houston [14th Dist.] 1982, no writ) (where, despite the fact that the Dr. Pepper
trademark was carried on the bottle’s label, Dr. Pepper was not involved in the processing,
bottling or capping of the bottle that caused the injuries, and although Dr. Pepper furnished
the manufacturer with the syrup that was used, there was no allegation that the syrup
caused the bottle top to fly off. Dr. Pepper therefore had not participated in the
manufacturing process). In these cases, it was established that the supplier had no
connection to the final manufactured product; they are therefore distinguishable from the
matter before this Court. 
           Here, although Gladstrong USA did not place its own name on the product itself,
more than a scintilla of evidence suggests it was nevertheless closely involved in the
importation, marketing and distribution of the lighter and that it participated significantly in
the issues related to the recall and subsequent redesign of the product. Furthermore, Mr.
Li’s testimony indicates that he, either individually or in his capacity as an officer and
director of Gladstrong Hong Kong, deliberately holds Gladstrong USA out to be the
manufacturer so that customers will believe the price is lower.
          Under Texas law, strict liability is triggered where evidence establishes that the
defendant placed the product into the stream of commerce, and the defective product was
a producing cause of the plaintiff's damages. Rourke v. Garza, 530 S.W.2d 794, 798 (Tex.
1975). Rourke extended this doctrine to include persons engaged in the business of
leasing products to third parties. Id. at 800. The extension is based on the principle that
"[w]here one is engaged in the business of introducing products into the channels of
commerce, he will be subject to strict liability for physical harm caused by such products
if they are unreasonably dangerous to the user or consumer whether he sells or leases his
products." Id.; see also Willowbrook Foods, Inc. v. Grinnell Corp., 147 S.W.3d 492, 496
(Tex. App.–San Antonio 2004, pet. filed) (citing Armstrong Rubber Co. v. Urquidez, 570
S.W.2d 374, 375-76 (Tex. 1978)).
          The principle expressed in Rourke is applicable here. More than a scintilla of
evidence reflects that Gladstrong USA was significantly involved in the marketing and
distribution of the defective product, that it placed this product into the stream of commerce
in the United States, and that it benefitted from that placement. This evidence also serves
to underscore the close interaction between Gladstrong USA and Gladstrong Hong Kong
and Gladstrong USA’s role as apparent manufacturer of the lighter. More than a scintilla
of evidence exists, sufficient to defeat a no-evidence motion for summary judgment, that
Gladstrong USA was the apparent manufacturer of the lighter as that doctrine is
understood and applied.
          As recently as 1990, the supreme court visited this issue, albeit in a slightly different
context:
I note that a non-manufacturer may, under certain circumstances, be liable
in the same manner as a manufacturer or seller of a defective product. See
Restatement (Second) of Torts § 400 (1965) (Selling as Own Product
Chattel Made by Another). For example, a trademark licensor may be liable
as an apparent manufacturer when the licensor is significantly involved in the
manufacturing, marketing, or distribution of the defective product. See Torres
v. Goodyear Tire & Rubber Co., 163 Ariz. 898, 786 P.2d 939, 945 (Ariz. 1990)
(trademark licensor that significantly participates in the overall process by
which the product reaches consumers, and who has the right to control the
incidents of manufacture or distribution is liable under section 402A of the
Restatement); Burkert v. Petrol Plus, 216 Conn. 65, 575 A.2d 26, 35 (Conn.
1990) (trademark licensor, absent any involvement in the production,
marketing, or distribution of defective product, is not liable in strict tort liability
or negligence); Connelly v. Uniroyal, Inc., 75 Ill. 2d 393, 389 N.E.2d 155, 263,
27 Ill. Dec. 343 (Ill. 1979) (trademark licensor liable in strict liability as integral
part of the marketing enterprise and participation in the profits reaped by
placing a defective product in the stream of commerce); Stanford v. Dairy
Queen Prods., 623 S.W.2d 797, 805 (Tex. App.–Austin 1981, writ ref’d n.r.e.)
(trademark licensor that only authorized use of trade name was not an "actual
vendor" of the defective product under section 400 of the Restatement); see
also Rockwell, Annotation, Trademark Licensor's Liability for Injury or Death
Allegedly Due to Defect in Licensed Product, 90 A.L.R. 4th 981 (1990); Keeton
et al., Prosser & Keeton on the Law of Torts § 100 (5th ed. 1984) (strict
liability may extend to licensor who participates in the construction and sale
of products made pursuant to a patent). But a mere designer of a defective
product is not liable in strict liability because the apparent manufacturer
doctrine does not apply when the party is not involved in the manufacture,
sale, or installation of the product. Affiliated FM Ins. Co. v. Trane Co., 831
F.2d 153, 155-56 (7th Cir. 1987). 

Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 617-18 (Tex. 1996) (Enoch,
J., dissenting) (concurring with the majority on this issue but expanding the analysis
of apparent manufacturer).


 The principles addressed by Justice Enoch in his
dissent (though based on different grounds) nevertheless apply well here, particularly
as they address the continuing doctrine of "apparent manufacturer" and in light of
Texas’ clear adoption of the Restatement of Torts (Second ) sections 400


 and
402A.



          Although we find that the doctrine of apparent manufacturer survives, it does
not appear to be applicable under the specific statutory definition of “manufacturer”
provided in section 82.001(4) of the civil practice and remedies code.
 
3. Common Law Indemnity
          We next examine whether the doctrine of “apparent manufacturer” remains
available in conjunction with common law indemnity. Metro insists that Gladstrong
USA did not urge summary judgment on common law indemnity grounds. To the
contrary, Gladstrong USA's no-evidence motion for summary judgment as to Metro’s
claim for indemnity states: 
Even if under Texas common law Gladstrong [USA] would owe a duty to
indemnify Metro because of Gladstrong's role as a supplier, there has been
no evidence whatsoever showing that Gladstrong was the supplier in the
marketing chain of the defective product in question.
 
We may therefore turn to SSP and Metro's complaint that the trial court erred in
granting summary judgment as to their common law indemnity claims. We will find
error if common law indemnity applies in the context of this case, because we have
already determined that there is more than a scintilla of evidence that Gladstrong
USA was the apparent manufacturer. 
          In a products liability action, a defendant will be held liable based upon proof
that it placed the product into the stream of commerce and upon further proof that
the defective product was a producing cause of the claimant’s damages. Firestone,
927 S.W.2d at 613. Strict liability claims may be asserted against "innocent sellers
who have no culpable responsibility except for their role as an intermediary seller that
merely received a defective product and unknowingly sold it down the stream of
commerce." Oasis Oil Corp., 60 S.W.3d at 253. Accordingly, "to balance the right
of consumers to sue any party who placed a product into the stream of commerce
against the potential unfairness of subjecting significant financial liability upon an
'innocent seller,' the Texas Legislature created a statutory right to indemnification." 
Id. 
          Even before the adoption of chapter 82, the availability of common-law
indemnity was extremely limited.


 However, two exceptions have survived adoption
of the statute, one in the context of products liability actions to protect an innocent
retailer in the chain of distribution. Fed. Petroleum Co. v. Gas Equip. Co., 105
S.W.3d 281, 285 (Tex. App.–Corpus Christi 2003, no pet.) (common-law indemnity
survives in claims by innocent retailers against manufacturers). 
          In Federal, this Court declined to extend that indemnity as between a retailer
and a supplier who did not also produce a defectively designed or manufactured
product. Id. at 286. However, in Federal, there was no suggestion that the upstream
supplier was the “apparent manufacturer” and therefore a “producer” of the product. 
There was no suggestion that the supplier had been “held out” to be the
manufacturer in order to entice additional purchases. 
          Further, section 82.002(e) of the civil practice & remedies code specifically
provides that the statutory duty of a manufacturer to indemnify an innocent seller “is
in addition to any duty to indemnify established by law, contract, or otherwise.” Tex.
Civ. Prac. & Rem. Code Ann. §82.002(e). As noted by Justice Enoch in Firestone,
927 S.W.2d at 617-18, the law is directed to protecting innocent sellers from liability
where a manufacturer or supplier has been significantly involved in the 
 
manufacturing, marketing, or distribution of the defective product. We believe such
is the case here, and that to find otherwise would be to abrogate the clear intent of
both the common law and the statutory scheme. We therefore conclude that the
common law duty to indemnify remains viable and is applicable in the context of this
case. 
          We have determined that the doctrine of apparent authority survives, as does
common law indemnity in limited circumstances. Evidence tendered by SSP and
Metro demonstrates that Gladstrong USA, although perhaps not the “manufacturer”
as defined under the statute, is so closely allied with the manufacturer as to be
virtually indistinguishable from it, and that the company has been deliberately “held
out” as the manufacturer of the product in order to entice additional consumer sales.
Evidence further exists to suggest that Gladstrong USA was involved in the
importation and marketing of the lighter. We therefore conclude that SSP and Metro
have satisfied their burden of proof to tender more than a scintilla of evidence as to
the challenged element of their indemnity claims, namely, that Gladstrong USA is the
manufacturer of the lighter. We conclude that the evidence is more than a scintilla
and sufficient to defeat a no-evidence motion for summary judgment. Our
conclusion is limited to the facts of this case.
          III. Conclusion
          We sustain SSP’s second issue on appeal. We sustain Metro’s fourth issue
on appeal. We reverse the trial court on these issues and remand for further 
proceedings. Because of our disposition, we need not address SSP's and Metro's
remaining issues.


 Tex. R. App. P. 47.1.
 
 
                                                                           ERRLINDA CASTILLO
                                                                           Justice 
 
 
Opinion delivered and filed this 
the 7th day of April, 2005.